## SOULE *v.* BARLOW.

*Adverse Possession.    Evidence.    Practice.    Infancy.*

In trespass *qua. clau.*, plaintiff introduced in evidence a deed of a farm from the administratrix of Anson B. to him, claiming that it included the *locus*, but the court ruled that it did not. Plaintiff then introduced a deed of the *locus* from B. to Andrew B., with evidence tending to show that it was in fact made to Anson B. The court ruled that as the first-named deed did not include the *locus*, the other did not show title thereto in the plaintiff, even if it was made to Anson B.; and in that ruling plaintiff acquiesced. *Held*, that thereafter plaintiff's claim rested on other grounds than a title derived from B., and that as to those grounds he was neither bound to admit nor estopped to deny B's title.

The *locus* was inclosed by a fence with plaintiff's farm in such a manner that the fence might indicate that it was erected merely for convenience in fencing the farm, and not for the purpose of inclosing the *locus;* and plaintiff performed acts of possession thereon every year for more than fifteen years. The court charged that if the fence was so built as a matter of convenience, then it was not built in the assertion of a claim of right to the *locus;* that, in order to have much weight as evidence of such claim, it should appear to have been so constructed that the parties who had an interest in the land, would, in the use of ordinary diligence, have been likely to observe it; that if so built under a claim of right, it was strong evidence of possession; and that adverse possession, to get title, must be peaceable, notorious and exclusive. *Held*, that the charge required the jury to find, if they found for plaintiff, that plaintiff claimed the *locus* as his own, and indicated by his fence to any ordinary observer interested to inquire, that he so claimed it, and that what he was doing upon it from year to year was being done under his claim; and that it was, therefore, in that respect, without error.

Defendant claimed the *locus* as devisee under the will of B., but produced no evidence of any act done by B. indicating any claim, nor any evidence to show that he himself took or claimed any possession until eighteen years after plaintiff's possession commenced. *Held*, that a neglect to charge the jury to find who first got possession was no error.

42

An entry upon land in possession of another, in order to work a legal interruption of such possession, must be made under such circumstances as to enable the party in possession, by the use of reasonable diligence, to ascertain the fact of entry, and the right and claim of the party making it.

If one have constructive possession, nothing short of *actual* possession by another will divest him of it.

The Statute of Limitations runs against an infant having only *color* of title to the land.

TRESPASS *qua. clau.* Plea, general issue, and trial by jury, September Term, 1876, ROYCE, J., presiding, and verdict and judgment for plaintiff.

The acts constituting the alleged trespass were committed on swamp lot 39 in Fairfield. Swamp lots 38, 39, and 40 contained four acres each, were twelve rods wide, and a part of sixty-eight swamp lots that were divided among the original proprietors of the town. Lot 39 lay between lots 38 on the south and 40 on the north, and was, with them, bounded on the east by the plaintiff's land, and on the west by a creek All of said lots were low and wet, and covered by a growth of cedar and other swamp timber extending onto the adjoining lands. The plaintiff introduced in evidence deeds from one Lobdell to himself of lot 38 and of a tract of land lying east thereof, dated in 1837, and a deed from Lois Bradley, administratrix of the estate of Anson Bradley, to himself, dated in 1821, of certain land lying east and north of lots 39 and 40, described as " the third division lots of the rights of Benjamin Elliott and Benjamin Elliott, Jr., in said town of Fairfield, containing one hundred acres in the whole," and claimed that lot 39 was embraced in said last-named deed; but the court held that it was not, and that the deed gave plaintiff no color of title thereto. The plaintiff's evidence tended to show that he took possession under his deed from Lois Bradley in the spring of 1822, and that then, as well as when he took his deed in 1821, lot 39 was inclosed with the land conveyed by said deed, not specifically and separately, but by a fence on the east, north, and south sides of his farm—the fences on the north and south sides extending to the creek; that the fence on the north side followed the plaintiff's line for some distance, and then turned southerly to the creek; that about 1850, a fence was built on the plaintiff's north line through to the creek; that the fence which in 1822 was

between lots 38 and 39, was removed after he made the purchase from Lobdell, and that thereafter, he and the owners of the land adjoining on the south, maintained a fence between lots 37 and 38 to within a few rods of the creek, where the ground was so soft as to be impassable by cattle ; that he had always maintained those fences, claiming the land inclosed by them, and maintained them for the purpose of keeping his own cattle within the inclosure and the cattle of others out; that the creek was impassable by cattle ; and that he cut firewood, rails, and timber on said lot in the spring when he took possession under his deed from Lois Bradley ; and that he had cut wood and timber of different kinds thereon for his own use, or for sale, or for both, every year since that time.; and that his cattle had sometimes gone across the lot to the creek for water. The plaintiff put in evidence the record of a deed of lot 39, dated in 1820, from Col. Bradley Barlow, purporting to be to Andrew Bradley ; and introduced evidence tending to show that when he took his deed from Lois Bradley, he examined said record, and that it was then to Anson Bradley, and that the record had been altered to Andrew Bradley ; but the testimony upon the question of whether such alteration had been made was conflicting, and the court submitted the question to the jury, but ruled that even if the deed was to Anson Bradley, it did not show title to lot 39 in the plaintiff.

The defendant, Ruel K. Barlow, produced as a witness Bradley Barlow, who testified that he was a son of Col. Barlow, and executor of his will; that his father told him that after conveying lot 39 to Andrew Bradley, he exchanged lots with him and let him have lots· farther south, for lots 38 and 39; and that he, as executor, claimed lot 39 as part of his father's estate. · The defendant then produced Lucy Barlow, widow of Hubbard Barlow and mother of the defendant, who testified that she and her husband moved to Fairfield in 1818, to within two or three miles of the lots in question; that Col. Barlow, her husband's father, then owned quite a number of swamp lots ; that her husband went to those lots by permission of his father, as he said, and got timber to fence his farm, and cedar for an out-door cellar ; and that she never heard the numbers of the lots. The defendant

also reproduced the testimony of Darius S. Barlow, who had died since a former trial, which was to the effect that he was a son of Col. Barlow; that before 1840, he heard the plaintiff ask his father for liberty to cut timber or tap trees on the swamp lot; and that about the same time he had a talk with the plaintiff on some of the lots, when the plaintiff pointed out a group of trees standing on a little elevation, saying that those were on witness's father's land. This testimony was all admitted against the defendant's objection. The defendant also put in evidence a copy of the will of Col. Barlow, and of the record of the settlement and distribution of his estate, by which it appeared that the defendant was a legatee under the will, and that lot 39 was duly assigned to him in May, 1839, and a copy of the assignment was duly recorded in the town clerk's office. The defendant testified that he was born in 1838; and that he had always claimed to own the lot in question after it was so assigned to him in the settlement of his father's estate. And his evidence tended to show that the fence, which at the time of trial ran to the creek on the north part of lot 39, was 11¾ rods from the north line of lot 39; that there was no indication of any fence ever having been built north of that fence, except the fence on the north line of the farm, nor any indication of any fence south, north of the one on the south line of lot 38; that in 1845 he caused wood and timber to be cut on said lots, and that he cut timber for rafters on lot 39 in 1850; that he thought he cut timber there as often as once in two years after that time to the commencement of this suit; that Anson Bradley died in 1820, and Andrew Bradley in 1832, and that from the record of the settlement of their estates, it appeared that lot 39 was not inventoried or treated as a part of the estate of either of them.

The defendant requested the court to charge that the fences, to indicate a claim to the land, must have been such and so located with reference to lot 39, taking into account the situation of the lot and the plaintiff's land, as to indicate to the ordinary observer who knew the situation of the land and its character, that the fences were built for the purpose of inclosing the lot and claiming title thereto; that after defendant gained color of title in

1836 upon the death of Col. Barlow, and until he became of age, the plaintiff could not commence to gain title by possession ; that after defendant became of age, plaintiff's acts were not an interruption of his possession ; that lot 39 was conveyed by the deed from Col. Barlow to Andrew Bradley in 1820, and if there was an exchange of swamp lots between Barlow and Bradley, then any act of Hubbard Barlow on lot 39 was under a right superior to any act of possession by plaintiff without right, and gave defendant color of title. But the court charged that plaintiff, to have acquired title by adverse possession, must have had peaceable, notorious, exclusive, and adverse possession of the land for a period of fifteen years, under a claim of title thereto ; and as to the kind of possession, that " if it was a swamp lot and good for nothing except for the purposes of a man going onto it and cutting timber when he had occasion, for his own use or for sale," he would thereby gain title by adverse possession. As to the fences, the court charged as follows :

The fencing of a piece of land is evidence in and of itself, of an act of possession and of a claim of right. The fence need not surround a particular piece of land specifically. If the land is inclosed with other lands of the party, with the design and intent to inclose it because the party claims title to it, it is sufficient ; but to have very much weight as evidence, it should appear that the fence was so constructed that parties, at least those having an interest in the land, would, in the use of ordinary diligence, be likely to observe and notice it. If these fences were built to the creek as a matter of convenience, or because less expensive, then the fence was not built in the assertion of a right or claim to the land ; but if built to inclose the land under a claim of right, it is strong evidence of an act of possession of the land ; and you are to weigh this with other evidence of occupation and possession of this property, and whether plaintiff in his entry upon the land in 1822, had such adverse possession for the period of fifteen years as to give him perfect title to this lot. And you are to consider in this connection what he did upon this lot in getting timber from 1822 down to a very late period of time, as his necessities required it, and selling it to others. You are to weigh all this testimony, and if you find that plaintiff acquired a title to the lot by adverse possession, then his title is perfect, unless it has been defeated by somebody subsequent to its acquisition. It is claimed

that in this possession the plaintiff did not derive any title by adverse possession, because his possession was interrupted by the acts of Hubbard Barlow between the years 1821 and 1834. But what right had Hubbard Barlow ? Mrs. Barlow testified that he got license from Col. Barlow in 1820 and 1821 to go onto several lots to get timber for the purpose of fencing his farm, and that he got it. If you should find such license given, there is no evidence that Col. Barlow had even color of title to lot 39. For all that appears he was a total stranger. To work an interruption under that license, it is incumbent upon the defendant to show that Hubbard Barlow entered upon the premises under some color of title, or under some person who had color of title, and that the entry was so made upon this lot. The party in possession has the right to treat all as trespassers who enter upon the land, unless they enter under the authority of the owner ; and to work an interruption, it must be made under such circumstances as to enable the party in possession, by the use of reasonable diligence, to ascertain the right and claim of the party making the entry. Even though Hubbard Barlow, under color of title, entered upon lot 39, if he or those claiming under him, claimed that the entry worked an interruption to plaintiff's possession (if you should find he was in possession of lot 39), then defendant must show that the entry was made under such circumstances that the party in possession, with ordinary and reasonable diligence, could have ascertained the fact, and ascertain the claim of title under which the party claimed. It is not every entry on land that will work an interruption of the possession of another. If you should find that there was no interruption of plaintiff's possession, and that he acquired a perfect title by fifteen years' adverse possession prior to 1840, then you will inquire what his rights were when the defendant entered upon the land,—defendant having color of title under the set-off of 1840. Much has been said about this doctrine of prior possession. If plaintiff was in actual possession and occupancy of lot 39 in 1845, at the time defendant made his first entry upon it, even although his title had not ripened into a perfect title, yet he could stand upon his prior possession, and could sustain trespass against defendant or anybody else that entered upon his possession simply under color of title. It is claimed that defendant has acquired title to this land by adverse possession since his first entry in 1845, and before the trespass complained of in this suit. If he was in actual adverse possession, peaceable, notorious, and exclusive, of any portion of the lot for fifteen years, his possession would extend constructively over the whole. That is all the advantage he gets by his colorable title ;

and you are to apply the same rule in testing the question whether he has got title against plaintiff by adverse possession, that I have already laid down, except that he is entitled to the benefit of constructive possession.

As to the deed from Col. Barlow to Andrew Bradley, so far as the defendant is concerned, admitting that the deed was to Andrew Bradley—that he and Col. Barlow made an exchange by which Col. Barlow had lots 38 and 39, yet, as Col. Barlow never had any title to those lots that is shown in evidence, defendant only gets color of title—he does not get the real title, because he has not shown any title in Barlow. If you should find that Col Barlow deeded that lot to Andrew Bradley, then he is entitled to the benefit of this evidence as to the parol exchange, as characterizing his claim to the land. If it was deeded to Andrew Bradley, and there was a parol exchange so that the title reverted equitably to Col. Barlow, and was inventoried and appraised as a part of his estate, that is important upon the question of his possession, what he understood it to be, and of his acts done under this claim of right. The defendant has nothing but color of title ; the real owner is not in court, whoever he may be.

As to defendant's minority, the court charge, that when the statute has commenced running, the party is acquiring his title by adverse possession, and that the owner of the land, though a minor, may be devested of the title, as his minority does not prevent the statute's running.

To the refusal to charge as requested, and to the charge as given, defendant excepted.

*Farrington & McIntyre* (*Noble, Davis & Smith* with them), for the defendants.

The court erred in holding that although the deed was from Col. Barlow to Andrew Bradley instead of Anson, and there was afterwards a parol exchange, and reversion of the equitable title to Col. Barlow, yet the real title not having been shown in Col. Barlow, it was only important as showing the defendant's claim.

The plaintiff attempted to show title in himself by Col. Barlow's deed, as he claimed, to Anson Bradley and from Lois Bradley, administratrix, to himself, and he is estopped from denying that Col. Barlow at the date of that deed had the legal title. *Adams, admr.* v. *Fullam,* 47 Vt. 558.

If the equitable title existed in Col. Barlow after the exchange

as stated, then it gave Col. Barlow and those claiming under him a superior right; and although plaintiff had prior possession, he could not maintain trespass against Col. Barlow nor Hubbard nor Ruel Barlow, who went upon the land under and by virtue of that right.  *Pope* v. *Henry*, 24 Vt. 560; *Ripley* v. *Yale*, 19 Vt 156.

The evidence tended to show a concurrent and joint possession during a portion of the time, from 1822 or 1823 down to the time of the commission of the alleged trespass.   Treating all parties as equal strangers to the real or equitable title, it was for the jury to say who first commenced to gain possession and had the prior occupancy.   This view of the case was not submitted to the jury, but the court throughout the charge assumed the priority of Soule's possession.   *Adams, admr.* v. *Fullam*, 43 Vt. 558; *Kidder* v. *Kennedy*, 43 Vt. 717; *Soule* v. *Barlow*, 48 Vt. 132.

The court should have charged in accordance with the defendant's request.   It was not what the plaintiff designed or intended, whether he built the fence as a matter of convenience or in the assertion of a right, but what the fence indicated to the observer, that would affect the right of other parties who claimed an interest in the land.   *Hodges* v. *Eddy*, 38 Vt. 327; *Buck* v. *Squiers*, 23 Vt. 498; *Spaulding* v. *Warren*, 25 Vt. 316; *Soule* v. *Barlow*, 48 Vt. 132; *Morse* v. *Churchill*, 41 Vt. 649; *Wood* v. *Willard*, 37 Vt. 377.   The building of the fence was not an act of possession.   3 Washb. Real Prop. 134; *Kidder* v. *Kennedy*, 43 Vt. 717; *Soule* v. *Barlow*, 48 Vt. 132.

The court should have charged as the defendant requested as to plaintiff's commencing to get possession during Ruel Barlow's minority.   The court properly allowed the jury to consider any fifteen years from 1822 or 1823 down to a very late period of time; charged that Soule might maintain trespass against Ruel Barlow, if, when Barlow went onto lot 39 in 1845, Soule had prior possession, although that possession had not ripened into a perfect title; but failed to tell the jury what would be the effect of Soule's commencing to get title after the death of Col. Barlow in 1836, down to 1849, when Ruel Barlow became of age.  *Soule* v. *Barlow*, 48 Vt. 132.

The acts of a person for a period of fifteen years, who simply uses the land to go onto and get timber when he has occasion to use it, or to use it as he deems best in order to have the beneficial enjoyment of it, does not fulfill the requirements of the law as to getting title by adverse possession.

*H. S. Royce (J. J. Deavitt* with him), for the plaintiff.

When the plaintiff purchased the Bradley farm and went into possession of it in 1822, the lot in question was inclosed by the fences inclosing the farm on three sides, and by the creek on the other side. As explaining his possession, and for that purpose only, the plaintiff was permitted to show that lot 39 was a part of the farm, that he purchased it and paid for it. And it has been so inclosed ever since. The plaintiff commenced using the lot in 1822, by cutting firewood and timber on it, and has so used it every year since.

He has almost every year cut and made rails and shingles on the lot; has sold pine and other timber from it, and has pastured some portion of it; and all this has been done under a claim of title.

The defendant first went upon the land, claiming it, as one of the heirs of Col. Barlow, in 1845, and cut and drew away a few sticks of timber. He cut a little timber on the land in 1850, and he thinks that as often as once in two years after that, he went upon the land and cut timber. It appears that neither Col. Barlow nor the defendant ever had any title to the lot. The defendant did not get constructive possession of the lot, because he did not occupy any portion of it.

The court correctly ruled that if the jury should find that the plaintiff had inclosed and occupied the land for a period of fifteen years, and also find that the defendant cut and drew away the timber as alleged in the writ, the plaintiff was entitled to recover. *Williston* v. *Morse*, 10 Met. 17; *Slater* v. *Rawson*, 6 Met. 439; *McGrady* v. *Miller*, 14 Vt. 128; *Ellithorp* v. *Dewing*, 1 D. Chip. 141; *Jakeway* v. *Barrett*, 38 Vt. 316, 323.

In the last-mentioned case it was held to be perfectly well settled that "an adverse possession of land continued for fifteen

43

years by one having no color of title will divest the true owner of his title." The land in dispute in that case was a marsh adjoining Lake Champlain, which was not capable of any use or possession, excepting to cut marsh grass in seasons of low water. It was not inclosed on three sides by a fence, and by a creek on the other side, as in this case, but the plaintiff proved that Bay Brook was a sufficient natural fence, and that the land in dispute was not separated from plaintiff's other land by · any fence. 2 Waterm. Tresp. 446; *Kilburn* v. *Rewee*, 8 Gray, 415; *Kidder* v. *Kennedy*, 43 Vt. 717.

"The use of timbered land for a long period for fuel, fences, &c., is sufficient to enable a party to maintain trespass." 2 Waterm. Tresp. 350. A possession by inclosure need not be shown. 2 Waterm. Tresp. 354; *Woods* v. *Banks*, 14 N. H. 101; *Hughes* v. *Graves*, 39 Vt. 359; *Chandler* v. *Walker*, 21 N. H. 283, and cases cited. The inclosing of the lots with other lands of the plaintiff, and claiming it to be his, constitutes an adverse possession. *Robinson* v. *Douglas*, 2 Aik. 364; *Wood et al.* v. *Willard*, 37 Vt. 377. "A disseisin must be an actual dispossession and holding out of the disseisee." *Wendall* v. *Blanchard et al.* 2 N. H. 456.

The opinion of the court was delivered by

WHEELER, J. As this case now stands, it shows no record evidence of title nor color of title in any one until the record of the assignment to the defendant, March 30, 1840, of the land in question. Nor is there anything in the case that shows who was during the time in question the rightful owner of it, further than as the facts shown tend to show a right acquired by possession. It is said that the plaintiff introduced a deed from Col. Barlow, understood to be Bradley Barlow the elder, to Andrew Bradley apparently, with evidence tending to show that it was made to Anson Bradley really, and claimed that it covered this land, and that therefore he claimed title from Col. Barlow from whom the defendant also claims title, and is estopped from denying that Col. Barlow had good title, on the principle that where two parties claim title from a common source, neither will be heard to

deny that a good title could come from that source. But the
court held that if that deed was in fact a deed to Anson Bradley,
it did not cover this land, and that the plaintiff could have no
claim to this land under it. That decision was acquiesced in by
the plaintiff, and thereafter his claim to the land stood on other
grounds, and not at all from or under Col. Barlow, and he was
not thereafter as to his other grounds of claim bound to admit
nor estopped to deny title in Col. Barlow. The trial was upon
his other claims, and, as the court held, there was nothing to
show even color of title in Col. Barlow against them. The case
therefore is to be determined upon the facts shown without refer-
ence to any color of title or actual rightful title till the defendant
got color in 1840. The plaintiff's evidence tended to show, and
this does not appear to have been much if at all disputed, that
in 1822 this lot was inclosed with the Bradley farm by a fence,
and that in the spring of that year he went into the occupation of
the farm, and during that spring he cut firewood, rails, and tim-
ber on the lot, and had done so every year ever since. If he had
had color of title to the lot and claimed title under his color, that
would have extended these acts of possession and his claim to the
whole, and he would have acquired adverse possession to the
whole. If the situation of the lot, and of the fence inclosing it
with the farm, had been such that the fence had indicated une-
quivocally that the plaintiff in his occupation of the farm in the
inclosure was claiming the whole land inclosed by the fences, the
fences would have the same effect as the color of title, but the
situation was such that the fences might indicate that they were
put where they were for mere accommodation and convenience in
fencing the farm, and not for the purpose of inclosing this lot, as
was held when the case was before in this court,* and that they
would not show any claim to this lot. Whether the fences did
indicate a claim to the lot, was a question for the jury, and they
have found that question for the plaintiff. The defendant claims
that this finding was under erroneous instructions, and whether
it was or not, is one question to be determined here. On this
subject the court charged, that if these fences were built to the

*48 Vt. 132.

creek, whereby they inclosed this lot, as a matter of convenience, or because less expensive, it was not in the assertion of a claim of right to the land ; that to have much weight as evidence it should appear that they were so constructed that the parties, at least those having an interest in the land, would, in the use of ordinary diligence, be likely to observe and notice them ; that if so built under a claim of right, it was strong evidence of possession, and that adverse possession, to get title, must be peaccable, notorious, and exclusive. This, taken all together, would seem to require the jury to find that the plaintiff claimed this lot as his own, and indicated by his fences to any ordinary observer interested to inquire, that he so claimed it, and that what he was doing upon it from year to year was being done under his claim. When his fences were so maintained upon the land that they would indicate that he was claiming it to the fences in extent, they would have the same effect in extending the effect of acts of possession that color of title would, and give him constructive possession in the same way. *Buck* v. *Squires*, 23 Vt. 498 ; *Wood* v. *Willard*, 37 Vt. 377 ; *Morse* v. *Churchill*, 41 Vt. 649.

It is urged that the court should have instructed the jury to find who first got possession of the lot, as it might, upon the evidence, be found that Col. Barlow or the defendant did. But there was no evidence that Col. Barlow ever took any possession, or did anything that would indicate that he claimed this particular swamp lot, and nothing but the mere hearsay testimony of Lucy Barlow to what Hubbard Barlow said, that he claimed any of the lots. And the evidence of the defendant did not tend to show that he took or claimed any possession until 1840, about eighteen years after the plaintiff's possession probably commenced, if it commenced at all. And further, the exceptions do not profess to set out the whole charge, nor show that the court was requested to charge as the defendant now claims should have been charged and refused, so that for anything that appears, the court did so charge. There being no request on this subject and refusal shown, there is no error shown in this respect, unless there was error in the charge, and none is discovered. The charge as to interruption of possession once commenced, appears to have

Soule *v.* Barlow.

been strictly correct, for the evidence of the defendant about the acts of Hubbard Barlow, if it was competent, only tended to show what would amount to constructive possession in Col. Barlow, under whom he acted, in case no one else had possession. But if the plaintiff had constructive possession, nothing short of actual possession would divest him of it. *Crowell* v. *Beebe*, 10 Vt. 33 ; *Ralph* v. *Bayley*, 11 Vt 521.

The only other point of importance is in respect to the refusal to charge as requested concerning the acquisition of title by possession commenced during the minority of the defendant. The request was, to charge that the plaintiff could not commence to gain title after the defendant had color of title during his minority. It is true that no right that a minor has can be lost by the mere running of the Statute of Limitations during his minority. But the request does not involve the losing a right at all. It is not based on the supposition that the minor has any right, but only the mere color of a right, to lose. The acquisition of property by prescription to which a minor has mere color of title without right or possession, would be acquiring the property of some one else, and not be defeating or obtaining any right of his, and, at most, as to him would be merely preventing him from obtaining the property of others in the same way. It cannot be successfully maintained that a minor is entitled to any superiority over adults in acquiring the rights of other adults by possession. The request involved this claim, and was not sound in law. And there was no legitimate evidence in the case on which to base a request in this respect that would be sound in law, for there was nothing but mere hearsay objected to, that tended to show that his testator ever had even a parol title to the lots.

Judgment affirmed.