SISTER ALBERTINA, Trustee for STELLA K. COCKETT, *vs.* THE KAPIOLANI ESTATE, Limited, DAVID KAWANANAKOA, JONAH KALANIANAOLE, W. KAAUWAI and KEANAPUNI.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED APRIL 21, 1902.                DECIDED JULY 10, 1902.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

When one is shown to have been, for more than the statutory period, in actual, open, notorious, continuous and exclusive possession of land, apparently as owner, and such possession is unexplained as by showing that it was under a lease from or other contract with or otherwise by permission of the true owners, the presumption is that such possession was hostile.

OPINION OF THE COURT BY PERRY, J.

This is an action of ejectment for a piece of land situate at Honuakaha, Honolulu, and containing an area of 1.6 acres. The property consisted formerly of a fishpond and its banks and, perhaps, a small piece, additional, of dry land, and was a *lele* of the Ili of Kaalaa, situate at Pauoa, Honolulu. Mahele Award No. 61 was signed by Kamehameha III on January 28, 1848, the King thereby consenting to the award by the Land Commission to one Namakeha of the Ili of Kaalaa. The Mahele Award reads as follows:

"Ko B. Namakeha.

| Na Aina. | Ahupuaa. | Kalana. | Mokupuni. |
|---|---|---|---|
| Kaalaa. | Ili no Honolulu. | Kona. | Oahu. |
| Waikele. | Ili no Waikele. | Ewa. | Oahu. |

21-D

Ke ae aku nei au i keia mahele, ua maikai.   No
Beneki Namakeha na aina i kakauia maluna: ua ae ia
'ku e hiki ke lawe aku imua o ka Poe Hoona Kuleana.

                                (Sgd)   Kamehameha.

Hale Alii, January 28, 1848."

On December 7, 1854, L. C. A. No. 7260 was issued to Na-
makeha, this award covering, however, only that portion of the
Ili known as Kaalaaluna and describing the latter by metes
and bounds.   R. P. 4371, dated May 14, 1858, to Namakeha,
was likewise for Kaalaaluna only,—again describing the land
by metes and bounds.   Namakeha was evidently entitled to
receive an award or patent for the remainder of the Ili, to wit,
for Kaalaalalo and the *lele*, but, for reasons not appearing in
this case, no such award or patent was issued during his life-
time.   He died in December, 1860.   On June 24, 1862, the
Minister of the Interior under the authority of the Act of 1860,
made an Award (Vol. 3 of Awards, p. 337) which reads as
follows:

"Helu 61.   Namakeha.

Ili no Kaaha, ma Honolulu, Oahu.   Helu 61 B. Ili Waikele,
ma Waikele, Ewa, Oahu.

Koe nae ke kuleana o na kanaka.

Costs $2 each, $4.00.

24, June, 1862.                        (Sgd)   L. Kamehameha.

Pd 25 June for 1 Aw'd (60)"

Assuming that "Kaaha" was intended for "Kaalaa," this award
or grant would seem to be broad enough in its terms to cover
the whole ili or, since Kaalaaluna had been already covered by
the Land Commission Award and Royal Patent above referred
to, at least Kaalaalalo and the *lele*.   However that may be,
Kaalaalalo is not claimed in this action under this award or
otherwise.

By whom this award or grant was applied for, does not appear
in evidence.   R. P. 7429, referring therein to Mahele Award
No. 61, was issued March 10, 1880, in the name of Namakeha,

with *habendum* to him, his heirs and assigns forever, and describing by metes and bounds the *lele* only. This Patent recites that application therefor was made to the Minister of the Interior by Her Majesty Queen Kapiolani.

The plaintiff claims under a deed of trust from Stella K. Cockett. The latter, it appears from the evidence, is the daughter and sole heir of one Hinau, who was the son and sole heir of Namakeha. She claims by inheritance from Namakeha, if the latter died intestate as to the land in controversy, but claims also that the *lele* was devised by Namakeha by his last will to Kapiolani, his widow, for life and after her death to the Prince of Hawaii, and that from the latter an undivided three-fourths interest passed by descent to her, the plaintiff. It may be assumed for the purposes of this case that Stella Cockett was entitled by inheritance to three fourths of the interest, if any, of the Prince of Hawaii. She seems to claim, further, under the award or grant of 1862 as the heir of Namakeha.

At the time of Namakeha's death, the title to the *lele*, so far as appears from the evidence, was in the Government; Namakeha at that time had no title to it. The presumption, if any, would be that under those circumstances he would not attempt to devise it by will. Nor can this will be construed as attempting to dispose of that property. The clauses in question read as follows, the first being in the original will and the second in a codicil:

"I give to my beloved wife Kapiolani the half of my house lot No. 4381 adjoining King and Alakea Streets in Honolulu and my land at Kaalaaluna is to be divided between her and Emma the wife of the King the division to be as follows, the mauka part of said land (No. 4371) mauka of the road going to Pauoa is for Emma and the two *lois* of Nakamakaweuweu on the makai side of the said road and the balance of said land and the place of Ulu and the houses and all other property there are for Kapiolani, provided she relinquishes her right of dower which the law gives to the widow."

"I hereby give to Kapiolani the two taro patches of Nakamakaweuweu and the place of Ulu and the remainder of said land and the houses and all the property there that is to say my

own house lot are for Kapiolani and the Prince of Hawaii in the following manner however during the life time of Kapiolani she is to have the income from the house lot to be hers only and at the end of Kapiolani's life it shall descend to the Prince of Hawaii."

Undisputed evidence shows that "the two taro patches of Nakamakaweuweu," "the place of Ulu" and "my own house lot," are all situate in Kaalaaluna. It is clear, we think, from the language used, that the testator by these provisions intended to and did dispose of land at Kaalaaluna only and not of Kaalaalalo or the *lele*. The *lele* would not, under the circumstances, pass as a part of Kaalaaluna.

It may be assumed for the purposes of this case that the plaintiff established a *prima facie* case by showing that Stella Cockett is the heir of Namakeha and that the award or grant above referred to was issued in 1862 in the name of Namakeha.

The defense to the action was that of adverse possession. At the close of the defendants' case, the presiding judge, upon motion, directed the jury to render a verdict for the defendants, such direction being upon the ground that the evidence offered for the defense made out a case of adverse possession and that there was no evidence before the court tending to rebut that showing. To that instruction the plaintiff excepted, and this is the exception mainly relied upon in this Court.

Undisputed evidence was introduced by the defendants showing that from 1852 or, perhaps, 1850, (Kapiolani and Namakeha married in 1850) Kapiolani at various times had the pond cleaned out, that her servants by her direction fished therein and delivered the fish to her for her use, that she sometimes gave them some of the fish, that she erected a small building on the bank of the pond or on the kula adjoining, that a man employed and directed by her to care for and take charge of the pond occasionally lived in that building, and that she at times objected to horses being pastured on the kula of the pond because the animals might enter the pond and cause injury to it. In 1875 Kalakaua, her husband, had the land surveyed.

In 1880 she procured the issuance to her, though in the name of Namakeha, of the Royal Patent above mentioned. On December 31, 1898, she divided the land into at least twelve lots and executed deeds or perpetual leases of said lots one each to certain of her retainers. Neither Namakeha, nor Hinau, who was of age at Namakeha's death, nor Stella Cockett, who became of age in 1886, ever exercised, so far as the evidence shows, any acts of ownership over the land. Of the witnesses who testified and who saw and knew of Kapiolani's acts, none saw or knew of any such acts by any of the three persons just named. This action was commenced in December, 1899.

Without reviewing the evidence in further detail, we think that it clearly appears therefrom that for much more than twenty years prior to the institution of these proceedings Kapiolani had possession of the land in dispute and that such possession was actual, open, notorious, continuous and exclusive. We think it also clear that the evidence is ample to support a finding that for more than the statutory period such possession was hostile. Further, had the case been left to the jury and had a verdict been rendered for the plaintiff such verdict could not have been held supported by the evidence. It would be by mere conjecture only that the jury could have arrived at the conclusion that the possession was not hostile but permissive. While it is true that the burden is on the party affirming the existence of adverse possession to show that his possession was in fact adverse, it is also true that where one is shown to have been for the statutory period in actual, open, notorious, continuous and exclusive possession, apparently as owner, and such possession is unexplained, either by showing that it was under a lease from, or other contract with or otherwise by permission of the true owner, the presumption is that such possession was hostile. See 1 Am. & Eng. Encycl. Law, 2nd ed., 888, 890; 1 Cycl. L. & P. 1146; *Morse v. Churchill,* 41 Vt. 649, 651; *Neel v. McElhenny,* 69 Pa. St. 305; *Wilkins v. Nicolai,* 99 Wis. 178, 182, 183; *Meyer v. Hope,* 101 Wis. 123, 125. No explanation whatever, was offered in evidence as to the

nature of Kapiolani's possession; nor was Kapiolani shown to have been a co-tenant of or to have occupied a fiduciary relation towards any of the alleged true owners.

. The application by Kapiolani, in 1880, for a Royal Patent covering the *lele*, was not a recognition by her of the title of the heirs or assigns of Namakeha. As the law stood, the Patent could not have been issued in the name of any one other than the original claimant or awardee.

The exception to the direction of the verdict is overruled; so also are the other exceptions.

*Peterson & Matthewman* for plaintiff.

*Kinney, Ballou & McClanahan* for defendants.