## KAPIOLANI ESTATE, LIMITED *v.* KANEOHE RANCH COMPANY and YIM QUON.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

SUBMITTED JANUARY 7, 1903.          DECIDED APRIL 1, 1903.

FREAR, C.J., GALBRAITH AND PERRY, JJ.

An exception to the order of a Circuit Judge granting a motion and directing a verdict for the defendant in an ejectment suit, one of the grounds of the motion being that the undisputed evidence showed title to the premises in controversy to have vested in the defendant by adverse possession, is overruled.

OPINION OF THE COURT BY GALBRAITH, J.

This was an action of ejectment commenced in the Circuit Court of the First Circuit, to recover 17.68 acres of rice land located in the District of Kailua, Koolaupoko, Island of Oahu.

The plaintiff claimed by paper title initiated by Royal Patent No. 2906, dated Jan'y 17, 1863, and delivered to the grantee April 15, 1879, while the defendants claimed by paper title under a grant of the ahupuaa of Kailua, May 20, 1854, and by quit claim deed from the government to C. C. Harris executed February 10, 1876, and by adverse possession of the premises for more than the statutory period of twenty years.

At the close of the evidence both parties moved the court for a direction of the verdict. The plaintiff's motion was based on three grounds, (1) that there was no evidence of an entry by the claimant under adverse possession, (2) that the evidence did not establish adverse possession for the statutory period, (3) that under Article 39 of the Constitution of 1864, there could be no adverse possession of the private lands of the King. The defendants set out five grounds in their motion, (1) that no connection had been established between "one-half of Kapia," the land to which the government had title and that described in Royal Patent No. 2906, and that the survey of the land described in this Patent was made *ex parte* and that there was no testimony identifying the land set out in this patent as part of the land of Kapia with known boundaries, (2) that the grant of "one-half of Kapia" was uncertain and incapable of definite location and was void for uncertainty; (3) that the government had parted with all of its title to the land in controversy prior to the time of the issuance of Royal Patent No. 2906; (4) that defendants' paper title to the premises was complete prior to the issuance of the patent to plaintiff's grantor and no part of the premises passed by said patent No. 2906; (5) that undisputed evidence established an absolute title in defendants by adverse possession even if their record title was not conclusive and perfect.

The court below denied the plaintiff's and granted the defendants' motion without specifying the ground on which the same was allowed and directed a verdict for the defendants. The plaintiff excepted to this ruling and this is the only exception urged in this court.

There being little or no dispute as to the facts in the cause

there was nothing to submit to the jury and the entire controversy was resolved into questions of law for the court.

There are many difficult and perplexing questions of law presented by the record and argued with ability and earnestness by counsel that it will not be necessary to go into or determine, since, if the defendants' contention on the one question of adverse possession is sustained, this alone will effectually dispose of the exception and absolutely bar all claim of the plaintiff to the premises in controversy.

This action was commenced on December 28, 1899. In the year 1876, the defendant Yim Quon entered into possession of the premises in controversy under a ten year lease from C. C. Harris, through whom the defendants deraign title, and commenced the draining and preparation of the land for rice cultivation. Yim Quon has been in the open and continuous possession of the land from that time up to the day of trial. He has been in possession as the tenant of the defendants and their predecessors in title and has paid rent to them and to no others.

It is admitted in plaintiff's brief that the possession of Yim Quon has been "physically continuous, open, adverse and hostile as regards the plaintiff" but it is contended that this is not sufficient to vest title, although his possession had continued for more than twenty years prior to filing this suit, for the reason that there was "no privity between Yim Quon's two holdings."

The record disclosed that in August, 1883, prior to the expiration of the ten year lease from C. C. Harris under which Yim Quon entered into possession, he accepted from Harris' daughter and heir, Nannie R. Brewer, a fifteen year lease for the premises at an advanced rental and that this lease excepted from its operation "all kuleanas of natives or others which may be situated within the premises above described." The plaintiff contends that the land in dispute was a kuleana within the "premises described" and was not included in this second lease and that from the date thereof, 1883, Yim Quon held the premises as a trespasser and not as tenant of defendants and their predecessors in title.

It is sufficient answer to this argument to state that it assumes that to be a fact which the evidence does not establish, *i. e.*, that the land in dispute is a kuleana. Counsel treat it as an Ili Kupono in one part of the brief and in another as a Kuleana. It may be either an Ili Kupono or a Kuleana but it cannot be both. If it was a kuleana, since no award issued for it, it passed to the defendants' grantor by the award of the Ahupuaa of Kailua in 1854 prior to the initiation of plaintiff's title and no title ever passed to the plaintiff. If it is not a kuleana it is not excepted from the operation of the lease and under plaintiff's admisson a perfect title has vested in defendant by adverse possession, unless another contention made by the plaintiff to be hereafter considered is good.

Again there is no evidence of probative force to show an intention of the parties to exclude the premises from the operation of the lease of 1883. Yim Quon was cultivating the land in dispute and agreed to pay an increased rental for it for an extended term and he certainly would not have made such an agreement if the area of the premises was to be reduced almost one-half. He continued to cultivate the land after as before the execution of the second lease and to pay rent to the same parties and testified that his possession of all the premises during all of the time of his occupancy was for the defendants. "The mode adopted for the transfer of possession may give rise to questions between the parties to the transfer; but as respect the rights of third persons, against whom possession is held adversely, it seems to us to be immaterial, if successive transfers of possession were in fact made, whether such transfers were effected by will, by deed or by mere agreeement, either written or oral." *McCully v. Langan*, 22 Ohio St. 32; *Vance v. Wood*, 22 Or. 77.

In the case at bar the possession was continuous, uninterrupted and adverse for more than twenty years. There can be no question of privity. The possession was by the same individual and he recognized, as landlords during the entire period, only persons having privity of title.

It seems that King Kalakaua acquired the plaintiff's title to the premises in the year 1880 and held the same until his demise in the year 1891. It is contended that during a part of this period, *i. e.*, between the date of acquisition and the abrogation of the Constitution of 1864 in the year 1887, Article 39 of that Constitution prevented the statute of limitation from runing against the private lands of the King and that if this seven years of the King's holding is deducted from the time of defendants' possession it is less than the statutory period. Counsel recognizes that this court held against this contention in the case of *Kapiolani Estate v. Cleghorn, ante* 330, but it is argued that the court was in error in that decision and that we should now review and reverse the holding then made. We are compelled to decline to do this for the reason that that decision was rendered after full argument and deliberate consideration and although there was the same party plaintiff, in that case as in this, represented by the same counsel, there was no motion for rehearing presented in that case. Under these circumstances we are not inclined to re-examine the decision in the *Cleghorn case*, especially since after a careful consideration of counsel's able argument we are inclined to the opinion that if we did go into the question again we would not reach any different conclusion now than we did at that time.

The exception is overruled.

*Kinney, Ballou & McClanahan* for plaintiff.
*Hatch & Silliman* for defendants.

OPINION OF PERRY, J.

I concur in the foregoing opinion in so far as it relates to the continuity of the possession held by the defendants and those under whom they claim, but on the subject of Article 39 of the Constitution of 1864 adhere to the views expressed in the dissenting opinion in the case of *Kapiolani Estate v. Cleghorn, ante* 330, 338. In view of the conclusion of the majority, it is unnecessary for me to consider the other questions argued by counsel.