# TERRITORY OF HAWAII, BY L. M. WHITEHOUSE, ITS COMMISSIONER OF PUBLIC LANDS, *v.* JOHN PAI-A, ET AL.

## No. 2313.

ARGUED NOVEMBER 14, 1938, AND
SUBMITTED NOVEMBER 15, 1938.   DECIDED DECEMBER 19, 1938.

COKE, C. J., PETERS, J., AND CIRCUIT JUDGE BROOKS
IN PLACE OF KEMP, J., DISQUALIFIED.

OPINION OF THE COURT BY COKE, C. J.

The above cause is here on a writ of error sued out by Kaui Pai-a, one of the above-named defendants, to review a judgment of the circuit court of the first judicial circuit entered in an action of ejectment brought by the Territory of Hawaii against Kaui Pai-a, et al., to recover two parcels of land situated near Ala Wai Canal and Kapahulu Road, Waikiki, City and County of Honolulu. Judgment was for the Territory. This appeal is by Kaui Pai-a alone, the other defendants having defaulted, and is confined to parcel 1 described in the complaint which is a small tract containing an area of .56 acre. Parcel 2, having an area of .62 acre, is not in controversy. It is not denied by the appellant that the paper or record title to parcel 1 is in the Territory. She asserts, however, that she became the owner of the property by adverse possession thereof for more than the statutory period of ten years.

The issues of fact were tried before the circuit judge, both parties having waived their right to a trial by jury. At the hearing the plaintiff introduced evidence of its legal title and rested, whereupon the appellant Kaui undertook to show by the testimony of herself and other witnesses that by continuous, open and adverse possession of the parcel in dispute by herself and her predecessor in interest

for more than ten years, she became the owner of the property prior to its acquisition by the Territory.

The greater portion of parcel 1 was purchased by Kahanaiki from the trustees of the estate of William Charles Lunalilo on January 28, 1885, who in turn transferred it to her two sons, S. M. Kanakanui and S. M. W. Kawelo, on April 7, 1891, and the Territory purchased it from the latter on September 3, 1919. The remaining two small remnants were acquired from the estate of James Campbell, through judgment of condemnation, on July 7, 1920. The appellant at the trial introduced evidence tending to show that the land in question was occupied by Kapahu (w) from sometime between the years 1882 and 1888 to the month of September, 1910; that at the latter date she made an oral gift of the property to the appellant at which time the appellant went into possession and has occupied the same continuously to the present date.

Ben Lauahi, a son of Kapahu, who is now sixty-six years of age, testified that he, in company with Kapahu, his mother, and Kaehu, his stepfather, moved on to the property and took possession thereof when he was between ten and sixteen years of age; that they cleared the land of underbrush, enclosed it with a fence and built a dwelling thereon in which they lived until Kapahu's death in 1911. Several witnesses besides Lauahi testified to the occupancy of the property and exercise of dominion over it by Kapahu as well as to having heard Kapahu on several occasions declare the property to belong to her. Lauahi also testified that he was present in 1910 and heard his mother, Kapahu, make an oral gift of the property to Kaui. If, therefore, Kapahu occupied the property adversely to the true owner and in 1910 made an oral conveyance to Kaui and surrendered possession to the latter and she continued in hostile possession, the adverse occupancy of the latter would be tacked to that of the former.

It is recognized in this jurisdiction that an oral transfer is sufficient to authorize tacking. (*Kapiolani Est.* v. *Kaneohe R. Co.,* 14 Haw. 643, 646; *Kainea* v. *Kreuger,* 31 Haw. 108, 117.) So if the occupancy of the property by both Kapahu and Kaui was hostile to the owner, by tacking to the possession of Kapahu that of her successor, the appellant, the total period of ten years required by the statute had expired before the Territory became interested in the property, it being recognized of course that prescriptive title cannot be acquired against the government and therefore the moment the Territory acquired title from the owners the running of the statute, if it in fact had been set in motion, was stayed. (*United States* v. *Nashville R'y. Co.,* 118 U. S. 120, 126.)

The trial judge held that in order to prevail over the owner of the paper title, namely, the government, the burden was upon the appellant to show affirmatively that the possession through which she claimed title was hostile to the true owners and that the evidence introduced at the trial was insufficient to establish such hostility. Thus the character of the possession relied upon by appellant, that is, whether or not such possession was hostile, becomes the controlling issue in this appeal.

The appellant does not claim that Kapahu went into possession of or occupied the property in question under any color of title. This fact is commented upon by the trial judge as having bearing upon appellant's claim of hostility of possession. The court indicated that the absence of a showing of color of title was a circumstance which detracted from the strength of appellant's attempt to show hostility. It is the rule in this jurisdiction that color of title is not indispensable to prove title by adverse possession if the other necessary elements, namely, actual, open, notorious, continuous and exclusive possession for the statutory period as the apparent owner, are shown to exist,

and is not explained. (*Albertina* v. *Kapiolani Estate*, 14 Haw. 321, 325. And see also 2 C. J. 172, 173.) Color of title reflects the character of the occupant's possession and if shown to exist is unquestionably an element tending to prove hostility of possession.

In the *Albertina* v. *Kapiolani Estate* decision the court said: "While it is true that the burden is on the party affirming the existence of adverse possession to show that his possession was in fact adverse, it is also true that where one is shown to have been for the statutory period in actual, open, notorious, continuous and exclusive possession, apparently as owner, and such possession is unexplained, either by showing that it was under a lease from, or other contract with or otherwise by permission of the true owner, the presumption is that such possession was hostile." (See also *Kapiolani Estate* v. *Cleghorn*, 14 Haw. 330; *O. R. & L. Co.* v. *Kaili*, 22 Haw. 673.)

These local decisions are strongly relied upon by counsel for appellant but we think they have failed to recognize the well-known rule that the *presumption* of hostility may be rebutted by other facts and circumstances shown to exist. In *Kapiolani Estate* v. *Cleghorn, supra,* an instruction that "where one is shown to have been in possession of land for the period of limitation, apparently as owner, and such possession is not explained or otherwise accounted for, it will be presumed to have been adverse, although this presumption is open to rebuttal," was approved. "Adverse possession is to be taken strictly, and every presumption is in favor of a possession in subordination to the rightful owner. Title by adverse possession, therefore, must be established by clear and positive proof." 1 R. C. L. 695. A possession, however open and long continued it may be, will not operate as a disseizen and commencement of a new title unless it imports a denial of the owner's title.

It was shown at the trial that the owners resided for many years adjacent to the property in dispute (in fact but a few feet distant from the dwelling house thereon occupied by Kapahu and Kaui) during the time it is claimed that Kapahu and later Kaui were in hostile possession and that during this period both Kahanaiki and her son, Kanakanui, often went upon the property and visited with Kapahu and after the death of the latter Kanakanui continued to frequent the property. It also appears that the relations of all of these parties were at all times of a friendly and amicable nature. It is not claimed by appellant that either Kapahu or Kaui ever made known to the owners any claim of ownership or of adverse or hostile occupancy of the property. The evidence shows that S. M. Kanakanui was not only a professional surveyor but an expert in land matters. It must have appeared to the trial court, as it does to us, as a most extraordinary circumstance that during these many years of occupancy of the land by Kapahu and Kaui if such occupancy was, as now asserted, actually hostile to the owners, the fact of such hostility was at no time communicated to any of the owners. It would further seem extremely strange if Kanakanui had knowledge of the intention of Kapahu or Kaui to assert hostile ownership that he, an expert in land matters, remained not only inactive but permitted the government taxes upon the property to be assessed against him and finally in 1919 executed a deed containing full covenants of warranty conveying the property to the Territory.

The testimony of Kahanaiki and Kanakanui would undoubtedly have shed an important light upon the issues of fact but such evidence was unobtainable due to the death of these parties many years prior to the date of trial.

Neither Kapahu nor appellant at any time returned the property for tax purposes or paid taxes thereon prior to the purchase thereof by the Territory. In fact no taxes at

all were paid by Kapahu and not until the year 1936, at about the date the present suit was instituted, did Kaui pay taxes and then only upon the advice of counsel. This is a fact which, while not of itself controlling, detracts from the strength of appellant's present claim of ownership. Failure to pay taxes for a long period of time tends to weaken the claim of ownership by adverse possession. (1 R. C. L. 699. See also *Finn* v. *Alexander,* 171 Pac. 602.)

All of these facts and circumstances established at the trial must have weighed strongly with the trial judge in determining the issues adversely to appellant. That such is the case is clearly indicated by the judge's repeated reference in his decision to the question of hostility and his conclusion that the evidence introduced and considered in its entirety was "more consistent with permissive occupancy than with hostile occupancy."

The findings of a trial judge in a case where trial by jury is waived will not be disturbed when presented here on a writ of error where in doing so this court is required to pass upon the credibility of witnesses or the weight of the evidence. (See R. L. 1935, § 3563; *In re Title of Kioloku,* 25 Haw. 357, 364; *Yuet* v. *Asiu, ante,* p. 1.)

Being satisfied, as we are, that there was sufficient evidence to support the judgment of the court below, it will not be disturbed.

Little need be said of the two remaining areas indicated on plaintiff's exhibit B which were acquired by the Territory from the estate of James Campbell by condemnation in 1920. Counsel for appellant conceded at the oral argument of the cause that appellant's evidence of ownership of these two small areas was of the same nature and extent as the evidence offered in support of her claim to the larger area included within parcel 1.

We have purposely refrained from discussing separately the numerous assignments of error (43 in number).

They have all been considered and are overruled and the judgment appealed from is affirmed.

*C. N. Tavares* (Hewitt & Tavares on the briefs) for defendant Kaui Pai-a.

*G. P. Kimball* (S. B. Kemp, Attorney General, with him on the brief) for the Territory.