## Tustin v. Sammons, Appellant.

*Trespass—Possession—Action—Evidence.*

To enable a plaintiff to maintain an action of trespass quare clausum fregit he must have the possession, actual or constructive, of the close which he alleges has been invaded. If the land entered by the trespasser is unimproved, possession will be presumed to accompany the title, and this constructive possession will support an action. If the land is improved, that fact shows that it is in the actual possession of some one. In such case the plaintiff cannot rest on his title but must show his possession.

Where in an action of trespass quare clausum fregit it appears from the uncontradicted testimony that plaintiffs removed a fence, invaded the possession of the defendant against the protest of the defendant, and re-erected the fence within the limits of such possession, the court can say as a matter of law that the plaintiffs are not entitled to recover.

Where in an action of trespass quare clausum fregit the plaintiff sets forth in his statement that the trespass consisted in destroying a certain fence, and he has served a notice to claim for a continuing trespass to the date of trial, he cannot at the trial show an independent trespass committed by the defendant in building a new fence within the line of plaintiff's possession.

A notice under the act of May 2, 1876, enables the plaintiff to recover damages down to the date of trial in case of a trespass of a continuing nature, but cannot be used to bring in separate, subsequent causes of action arising between the issuing of the writ and the trial, even though they be trespasses of the same kind.

Argued April 21, 1902. Appeal, No. 49, April T., 1902, by

defendant, from judgment of C. P. Greene Co., April T., 1898, No. 64, on verdict for plaintiffs in case of William Tustin and Mary Jane Tustin v. Rossell Sammons. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Reversed.

Trespass quare clausum fregit. Before CRAWFORD, P. J.
The court refused binding instructions for defendant.
Verdict and judgment for plaintiffs.

*Errors assigned* were (1) answer to point quoted in the opinion of the Superior Court; (13) in refusing binding instructions for defendant.

*R. F. Downey*, with him *James J. Purman*, for appellant.—
It made no difference who held the legal title to the small strip of ground. It was improved land and actually in the possession of the defendant at the time Tustin removed the original fence. If he wished to test the title to the land he should have brought his action of ejectment and not have attempted to gain the possession of said land in the manner in which he did: Zell v. Ream, 31 Pa. 304.

In an action of trespass quare clausum fregit we submit that it is not a question of title that is involved but a question of possession. A man in the peaceable and quiet possession of real estate, without any paper title therefor, may maintain an action of trespass against any one invading his possession, whilst a person with good title to-real estate, but out of possession, cannot maintain such action: Wilkinson v. Connell, 158 Pa. 126; Collins v. Beatty, 148 Pa. 65; Weitzel v. Marr, 46 Pa. 463; Addleman v. Way, 4 Yeates, 218; Busch v. Calhoun, 14 Pa. Superior Ct. 578; Stuyvesant v. Tompins and Dunham, 9 John. (N. Y.) 61.

The alleged trespass of March, 1898, was not a continuing trespass of that of November, 1897. If it had been, possibly the notice given under the act of 1876 would have been sufficient. But it is as separate and distinct as two trespasses could possibly be: Pierce v. Pickens, 16 Mass. 470.

*M. R. Travis*, of *Cumpston & Travis*, for appellees.—Plaintiff had at least constructive possession before he built his fence

and actual possession thereafter until March 7, 1898, a period of more than three months from the building of the fence to the tearing down of same. Constructive possession will support an action of trespass: Wilkinson v. Connell, 158 Pa. 126.

A vendor after conveyance and before delivery of possession is to be regarded as a trustee for the vendee so far as regards the possession, just as he was a trustee of the title before conveyance: Connor v. Bell, 152 Pa. 444; Olwine v. Holman, 23 Pa. 279.

OPINION BY BEAVER, J., April 20, 1902:

Plaintiffs declared in trespass: "For that ·the said defendant heretofore, to wit: from the first to the sixth days of December, A. D. 1897, or near that time, with force and arms and without authority, did enter upon the plaintiffs' land situate in Aleppo township, said county, and did then and there wilfully and maliciously remove the top rails from several posts of a fence which the plaintiff has recently built, and in other ways did injure and damage said fence." Notice was given of the plaintiffs' determination to claim damages for a continuing trespass until the date of trial. There was no amendment of the plaintiffs' statement offered or filed. According to the testimony of one of the plaintiffs, a fence which inclosed the southern side of his farm had been in existence continuously, to his knowledge, for thirty-two years. He purchased the farm from the defendant in 1879, the deed therefor having been made October 24, 1881. The fence seems to have been considered by the plaintiffs and defendant as a line fence. In his cross-examination one of the plaintiffs said: "Q. Now, wasn't your agreement, you were to keep that up and Mr. Sammons was to keep the piece running from there out to Weed Bryan's? A. There was such talk as that. Q. And didn't you do that? A. No, sir; he did not keep his up. Q. And you kept yours up, under this agreement? A. I do not know that there was any agreement. I told him I would keep up one end and he could keep up the other. Q. You kept up the end where there was a dispute? A. Yes, sir. Q. And he did not? A. He might have laid up a rail now and then. Q. That was your end to keep up, under your agreement? A. We never just had it divided."

It became necessary to renew this fence, so maintained. The plaintiffs were uncertain as to the line. The defendant claimed that the true location of the line was about five feet north of where the old fence stood. The plaintiffs first employed James Sammons, a brother of the defendant, to run the line, who ran it in accordance with the claim of the defendant, and they built part of their new fence along the line so run and pointed out to them by the surveyor. Becoming dissatisfied with the location of Sammons, they employed Dinsmore & Throckmorton, who ran, according to their (plaintiffs') drafts and papers, so far south of the old fence that they were not satisfied as to the location. They next employed a surveyor named Ferrell, who located the line south of the old fence, partly in an old road and partly through the enclosed land of the defendant. The plaintiffs, being apparently satisfied with this location, proceeded to erect their new fence on the line fixed by Ferrell, without the consent and in spite of the protest of the defendant. After the fence, which seems to have been a post and rail fence with the posts supported by wires, was finished, the wires were cut—presumably by the defendant—and the fence rendered worthless. Subsequently, a new fence of fifteen or twenty panels was built by the defendant, about five feet north of the old fence, about March 7, 1898. Were the plaintiffs, under these facts, all taken from their own testimony, entitled to recover in trespass?

The defendant at the trial presented the following point for charge : "William Tustin, one of the plaintiffs, having testified that a fence had stood between his land and the land of the defendant for upwards of thirty years, and had been kept up by them since he owned his land, a period of upwards of twenty years ; that he, the said Tustin, had used the land up to that fence from the north side, and had had no possession of the land on the south side thereof ; that Russell Sammons, the defendant, had during the same period of time used and had the exclusive possession of the land up to that fence from the south side thereof, the said William Tustin, by moving this fence in the latter part of November, 1897, over on to the land occupied and in the possession of the defendant, which fence was promptly removed by said defendant, did not, by the removal of the fence in the manner in which it was done, acquire any such

actual and peaceable possession of the premises as would give
them a right of action in trespass against the defendant for
tearing down such new fence so partly erected by said plaintiffs
on the land south of such original fence," which was answered
as follows: "Now I don't affirm that point squarely, as pre-
sented; but, in connection with what I have said to you, you
must determine that matter. I will leave that question to you
as to whether or not he acquired peaceable possession under
his purchase and in the manner he took possession, and in the
manner in which the fences were with regard to the open road-
way, and so on, and all the other facts."

The point for charge, being based upon the testimony of one
of the plaintiffs, the facts being undisputed, contained a legal
proposition to which the defendant was entitled to an answer.
It is not answered as a legal proposition and the defendant
thereby suffered. In our opinion, this point and the defend-
ant's ninth point " that, under all the evidence in this case,
the verdict of the jury should be for the defendant," should
have been affirmed. The discussion of the question raised by
these two points and the result reached thereby avoids the ne-
cessity for the discussion of other questions involved in the
answers to the points of both defendant and plaintiffs which
are set forth in other assignments of error. In Wilkinson v.
Connell, 158 Pa. 126, the ground upon which a plaintiff in
trespass must base his right to recover is clearly stated: " To
enable a plaintiff to maintain this action (trespass quare clau-
sum fregit) he must have the possession, actual or construc-
tive, of the close which he alleges has been invaded. If the
land entered by the trespasser is unimproved, possession will
be presumed to accompany the title, and this constructive pos-
session will support an action. If the land is improved, that
fact shows that it is in the actual possession of some one. In
such case the plaintiff cannot rest on his title but must show
his possession." " Possession of the locus in quo of a trespass
is the test of the right to sue for it. For an injury to wild land
the owner may maintain an action by showing his title to it,
but this is on the principle that the law gives him a construc-
tive possession. When another person has the actual occu-
pancy, the exhibition of a paramount title is not sufficient to
sustain trespass, either against the disseisor or against any-

body else.　The right of the true owner to the use and profits of the land is suspended, until he regains possession, either by an entry or under a legal judgment:" Caldwell v. Walters, 22 Pa. 378.　See also Enterprise Transit Co. v. Hazelwood Oil Co., 20 Pa. Superior Ct. 127.　The plaintiffs in this case had no possession, actual or constructive, of the land which they invaded.　They occupied, according to the testimony of one of the plaintiffs, the land north of the old fence.　The defendant occupied all the land south of it.　When, therefore, the plaintiffs removed their fence, they invaded the possession of the defendant.　Their entry was not peaceable, it was hostile.　It was contrary to the law and against the protest of the defendant.　How then can they invoke the aid of the law to hold what they had then unlawfully acquired.　Whether they had title to the land enclosed by the new fence is not the question. If we were trying an ejectment, that question, of course, would enter into the very essence of the dispute, but it is not so here. The trial judge in the court below seemed to entertain the opinion that in some way the question of title was involved and in this way probably fell into the error which pervades the entire case, as presented to the jury.　The plaintiffs in an elaborate and involved point—the first point for charge presented by them—endeavored to raise the rather novel proposition that the defendant having conveyed more land than he delivered to the plaintiffs, held the land subsequently acquired by him, at least so far as the amount necessary to make up the full amount conveyed, as trustee for the plaintiffs ; that his possession was, therefore, the possession of the plaintiffs and that he was estopped from denying it, and that the plaintiffs were, therefore, constructively in possession of the land enclosed. It is not surprising that in the answer to this point the court said : " That point is not very clear to me, gentlemen of the jury, and it embraces so much I will have to answer it with a qualification," etc.　There was no such thing as a constructive possession by the plaintiffs in this case.　The possession was held by them to the original fence.　South of that fence it was held by the defendant.　The plaintiffs claimed south of the fence and the defendant claimed north of it.　Their claims were known to each other.　The plaintiffs, in disregard of the rights of the defendant, in disregard of the line, as established by the

first surveyor employed by them, removed their fence, so as to embrace a portion of the land in possession of the defendant. This is clear and unmistakable from the testimony of one of the plaintiffs, and it is equally clear that, under the law, trespass quare clausum fregit cannot be maintained.   The plaintiffs further endeavor to avoid the difficulty thus presented by claiming for an independent trespass committed by the defendant in building fifteen or twenty panels of fence north of the old fence in the month of March, 1898.   If such a trespass was committed, it was distinct and independent, both as to time, place and manner, is not included in the plaintiffs' statement and could not be covered by a notice to claim for a continuing trespass to the date of trial.   If the defendant's first and ninth points had been affirmed, as they should have been, there would have been an end of the case, and, in sustaining the first and thirteenth assignments of error, as we now do, the judgment must be reversed.

It is unnecessary to consider the remaining assignments of error, although it will be seen from what has been said that a number of them would be necessarily sustained.   Judgment reversed.


Rice, P. J., dissenting:

This action of trespass was brought on February 8, 1898. In their statement filed on the same day the plaintiffs alleged that the defendant, "from the first to the sixth days of December, 1897, or near that time, with force and arms and without authority, did enter upon the plaintiffs' land and then and there did wilfully and maliciously remove top wires from several posts of the fence which the plaintiff had recently built, and in other ways did injure and damage said fence."

In January, 1899, the plaintiffs gave notice that upon the trial of the case they would claim damages up to the date of trial.   It appeared from the plaintiffs' testimony that the fence in question was completed in the latter part of November, 1897, and that the trespass complained of in the statement was committed about a week or ten days afterwards.

I concur with my brethren in the conclusion that there was reversible error in permitting the plaintiff to prove that on March 7, 1898, after the suit was brought, the defendant completed the demolition of the fence and rebuilt it upon what the

plaintiff claimed to be his land. A notice under the act of
May 2, 1876, enables the plaintiff to recover damages down to
the date of trial in case of a trespass of a continuing nature,
but cannot be used to bring in separate, subsequent causes of
action arising between the issuing of the writ and the trial,
even though they be trespasses of the same kind: Hileman v.
Hileman, 172 Pa. 323 ; Pantall v. Rochester & Pittsburg Coal
& Iron Co., 204 Pa. 158.

But I am unable to concur in the conclusion that it was the
duty of the court to declare as a matter of law that the plain-
tiff could not maintain trespass for the injury declared on in
his statement of claim.    Whether such conclusion would be
warranted if the point quoted in Brother BEAVER's opinion
embraced all the relevant facts, is a question which I deem it un-
necessary to discuss, for I am unable to agree that it embraced
all the relevant facts.

The fence in question was built by the plaintiff to enclose
the land claimed by him to be embraced by his title.   It in-
cluded a narrow strip of land, which for part of its length was
part of an old road, which it was claimed by the plaintiff had
been abandoned, and for the other part of its length lay to the
south of an old fence which for many years prior to 1887 had
bounded the possessions of the parties.   If the part of the
strip which " lay out to the old road," as the witnesses expressed
it, was embraced within the plaintiff's title, how can it be said
that the plaintiff obtained possession of it unlawfully by en-
closing it by a fence, when the old road ceased to be a public
highway ?   Upon what theory can it be claimed that the de-
fendant had a right to destroy that portion of the fence, and
would not be liable in trespass for so doing ?   This has not
been made clear to my mind.   But aside from this, there was
evidence from which the jury were warranted in finding that
both parties claimed that the old fence was not on the line be-
tween their properties, although they did not agree as to the
true location of the line.

The plaintiff testified: " Well I went up there to fix my
share of this fence.   I could not keep his stock out and I went
up there to build it, and he came to me and told me that he
wanted it on the line.   I told him I did, too, as near as I could
get it ; somehow that way."

After that the plaintiff, taking the defendant at his word, had surveys made for the purpose of ascertaining the true location of the line and proceeded to erect a fence on the line thus ascertained. As to what occurred at the time the fence was being built, the plaintiff testified as follows :

" Q. Didn't he tell you when you were building that fence if you built it there he would tear it down? A. Yes, sir. Q. What did he tell you? A. He said if I didn't put it on the line he would. Q. And he didn't agree to that as the line? A. It appeared not."

The interpretation of this language was for the jury, but they might fairly interpret what the plaintiff said to mean, not that he could tear down the fence in any event, but that he would tear it down if it was not on the true line. If the plaintiff's testimony was to be believed, it certainly was not for the court to declare that he obtained possession by artifice or violence, and the doctrine enunciated in Zell v. Ream, 31 Pa. 304, was not applicable to the case. In short, if both parties claimed that the old fence was not on the true line and both desired it to be put on the line, and if the plaintiff put it on the true line and was in peaceable possession of the land thus enclosed, even for so short a period as a week or ten days, I do not see why he could not maintain trespass. I respectfully submit that these questions of fact, including the question of the peaceableness of the plaintiff's possession, were for the jury.