LAURA D. BROWN *v.* NARGES CLARK.

January Term, 1901.

Present:  TAFT, C. J., MUNSON, START, WATSON and STAFFORD, JJ.

Opinion filed May 9, 1901.

*Real estate—Title by adverse possession—*If each of two adjoining land owners occupies to a dividing fence for more than fifteen years, each claiming to own to the fence and beyond, the possess-

ion of each is adverse, and when such occupation of each has been open, continuous and exclusive, title by adverse possession is established.

TRESPASS. Plea, the general issue. Heard on the report of a referee and exceptions thereto, Rutland County, September Term, 1900, *Tyler,* J., presiding. Judgment on the report for the defendant. The plaintiff excepted.

*George E. Lawrence* and *Fayette Potter* for the plaintiff.
*Butler & Moloney* for the defendant.

STAFFORD, J. The action is trespass on the freehold, and the plaintiff is to have judgment unless the defendant has gained title by adverse possession. He has occupied for the necessary period, continuously, openly and exclusively. The only question is whether his occupation has been adverse, or, "under a claim of title," which Judge Peck says is the same thing. *Morse* v. *Churchill,* 41 Vt. 649, 652.

The dispute is over the boundary between two farms in Pawlet. The plaintiff owns the south farm, the defendant the north. The land is a mountain-side, valuable only for its timber.

In 1872, Hulett, who then owned the north farm, built some sort of a fence through this mountain tract, merely for his own convenience, without regard to the boundary, not knowing where the line was. Years before, there had been a crooked brush fence, farther to the south, erected by the adjoining owners in ignorance of, and without regard to, the boundary, which, they said, could be run out some time if necessary. Two years after Hulett built his fence he conveyed to the defendant, who, finding it there and understanding, in one way or another, that the line was somewhere south of it, thereafter, as the report states, "kept it up more or less in the same place—such as it was." He made the repairs himself except once when the plaintiff or her mother sent a man to help him.

Cattle sometimes ran back ˎand forth through its breaks and imperfections, but aside from that he occupied on the north side to the exclusion of others.    In the same way, the plaintiff occupied on the south.    The defendant claimed that the true line was further south, and claimed to own, yet never occupied, south of the fence.    At the same time the plaintiff claimed that the true line was further north, and claimed to own, yet never occupied, north of the fence. Neither claimed to know just where the line was, and their relations appear to have been friendly enough until this controversy arose, when a survey was made and the line found to be some sixteen rods north of the fence. The report is treated, on both hands, as meaning that the claims of the parties above set forth were open and understood.

Here, then, we have a line lived up to as the common boundary for more than fifteen years, each owner claiming all the while to own to the fence and beyond,—that is, all the land he was occupying and more.    If the report could be read as meaning that each claimed to the true line, on whichever side of the fence it might fall, the occupation might not be adverse; but the finding is ˎexplicit that each claimed to own what he occupied.    ˎThis, with the other facts found above stated, makes out the defendant's title by adverse possession.

*Judgment affirmed.*