## JOSIAH J. TRUITT vs. EDWIN R. OSLER.

1. TRESPASS—ACTIONS—RIGHT OF ACTION—POSSESSION OF PLAINTIFF.

To recover in an action of trespass *quare clausum fregit*, the plantiff must show that he was in the actual possession of the premises at the time of the trespass.

2. TRESPASS—RIGHT OF ACTION—POSSESSION OF PLAINTIFF.

The actual possession which will support an action of trespass *quare clausum fregit* depends somewhat upon the character of the land, the purpose for which used, and the condition in which it is permitted and desired to remain.

3. TRESPASS—RIGHT OF ACTION—POSSESSION OF PLAINTIFF.

The actual possession required to maintain an action of trespass *quare clausum fregit* does not mean that the land must be inclosed, but such possession may be proved by acts of ownership.

4. TRESPASS—RIGHT OF ACTION—POSSESSION OF PLAINTIFF.

Actual possession by the plaintiff, in an action of trespass *quare clausum fregit*, of land covered with oak and pine timber being allowed to grow for future profit, did not require any action unless a trespass was expected; and

the action of plaintiff in informing defendant of his ownership before the trespass, and surveying the land and posting notices, constituted acts of ownership tending to show such possession.

5. TRESPASS—RIGHT OF ACTION—POSSESSION OF PLAINTIFF.

The owner of a farm, which has been in his or his tenant's actual physical possession for many years, may maintain an action of trespass as to a part which has been permitted to grow up in timber, though no visible acts of ownership have been exercised as to the particular tract prior to a threatened or apprehended trespass.

6. TRESPASS—TRIAL—QUESTIONS FOR JURY.

Where there is some evidence tending to show actual possession by the plaintiff in an action of trespass *quare clausum fregit*, the question of possession will be submitted to the jury, especially where it is desirable to have a determination on the merits to avoid the expense of another trial and the risk of not being able to produce all the witnesses again.

7. TRESPASS—RIGHT OF ACTION—POSSESSION OF PLAINTIFF.

A trespasser cannot by his very act of trespass gain possession of the land, so as to prevent the owner from maintaining his action, because he was not at the time in physical possession.

8. ADVERSE POSSESSION—QUESTIONS FOR JURY.

Whether or not title by adverse possession had been proven was a question for the jury, where it was disputed and the evidence was conflicting.

9. TRESPASS—DEFENSES—TITLE OF DEFENDANT.

A defendant in an action of trespass *quare clausum fregit* is not guilty of trespass, if he can show good legal title in himself, either by paper title or adverse possession. .

10. ADVERSE POSSESSION—NATURE AND REQUISITES.

In order to acquire title by adverse possession, the possession must be exclusive, adverse to the rights of all others, and continued for at least twenty years; but it is not necessary that the boundaries be indicated by fences.

11. TRESPASS—RIGHT OF ACTION—TITLE TO SUPPORT.

A plaintiff in an action of trespass *quare clausum fregit*, who proves that he was in possession when the trespass was committed, is entitled to recover without further proof of title, unless the defendant proves a better title, or a possession in common with the plaintiff, in which case both parties are put upon proof of title, and he who proves the legal title in himself must prevail.

12. ADVERSE POSSESSION—EXCLUSIVE POSSESSION—EFFECT OF COMMON POSSESSION.

In case of a mixed or common possession of land by both parties to the suit, the law adjudges the rightful possession to him who has the legal title, and no length of time of such holding can give title by adverse possession, as against the legal title.

13. BOUNDARIES—DESCRIPTION—NATURAL BOUNDARIES CONTROL.

Where a deed calls for natural and well known boundaries, which are inconsistent with the courses and distances, the boundaries control.

14. TRESPASS—RIGHT OF ACTION—PERSONS LIABLE.

A party is liable for a trespass to real property, whether committed by himself or through his agents or workmen.

15. BOUNDARIES—CONCLUSIVENESS—PROBATE PROCEEDINGS—SURVEY ORDERED BY ORPHANS' COURT.

A survey of land made in pursuance of an order of the Orphans' Court is not conclusive as to the legal title of the lands embraced therein, but is to be considered as other evidence, and given the weight and effect to which the jury think it is entitled.

16. TRESPASS—DAMAGES—CUTTING AND REMOVAL OF TIMBER.

The measure of recovery in an action for trespass by cutting trees was what the timber cut was actually worth when standing.

17. DAMAGES—ACTUAL DAMAGES.

Actual damages cannot be speculative or conjectural, but must be specifically proved.

18. TRESPASS—EVIDENCE—WEIGHT AND SUFFICIENCY.

In an action of trespass *quare clausum fregit*, the jury should render their verdict for that party in whose favor is the preponderance or greater weight of the evidence.

19. NEW TRIAL—GROUNDS—VERDICT CONTRARY TO EVIDENCE.

That the testimony of the plaintiff and his witness was contradictory and uncertain was not ground for a new trial, as it was for the jury, and not the court, to say what part of their testimony was true and what untrue; and for the purposes of defendant's motion for a new trial plaintiff was entitled to have the construction that was most favorable to himself placed upon the testimony.

20. TRESPASS—DEFENSES—TITLE OR RIGHT OF POSSESSION OF DEFENDANT.

The possession of the defendant in an action of trespass *quare clausum fregit*, which was not gained until the alleged trespass was not sufficient to prevent a recovery, though defendant claimed to have cut plaintiff's trees under color of title, and so to have been in lawful, and not tortious, possession, as any trespasser might claim to be acting under color of title, but would be none the less a trespasser.

21. ADVERSE POSSESSION—NATURE AND REQUISITES—EXCLUSIVE POSSESSION—MIXED POSSESSION.

Where woodland lies between the land of two persons, who both claim it, it is a mixed possession, not an exclusive adverse possession, and the law adjudges it to him who has the legal title.

22. TRESPASS—RIGHT OF ACTION—POSSESSION OF PLAINTIFF.

The title to unoccupied land draws with it the possession, and the plaintiff may recover in an action of trespass, if he has the immediate right and title; otherwise an owner of timber land might be without any adequate remedy when his timber is cut by one having no title, which is a condition which the law seeks to prevent.

(*February* 17, 1914.

PENNEWILL, C. J., and CONRAD, J., sitting.

*Woodburn Martin* and *Robert C. White* for plaintiff.

*Howard J. Cooke* and *Charles W. Cullen* for defendant.

Superior Court, Sussex County, February Term, 1914.

ACTION OF TRESPASS QUARE CLAUSUM FREGIT (No. 3, April Term, 1913) brought by James J. Truitt against Edwin R. Osler, to recover damages for breaking and entering the close of the plaintiff, situate in Seaford Hundred, and cutting timber trees then standing thereon.

Directed verdict for defendant, refused. Verdict returned for plaintiff, and motion for new trial refused.

A part of the premises in dispute had formerly been a portion of the bed or bottom of an old-mill pond, now gone down, of which only a small stream ten feet wide remains. Both parties asserted paper title and also laid claim by possession to the *locus in quo*, which for many years had laid uninclosed between the lands which had been respectively acquired by them, and was covered with old growth pine timber.

The plaintiff proved his legal title from a land warrant, granted, by virtue of an act of assembly, to Jonathan Eashum on November 14, 1793, authorizing the location and survey of a certain tract of vacant land.

In pursuance thereof, the said vacant land was located, surveyed and plotted, and called "Eashum's Venture," and was then duly assigned to Abel Tull, to whom the patent was subsequently granted.

In 1799, said Tull conveyed to Joshua Wright that part of the western side of said tract, containing twenty-five and one-half acres, which bordered on both sides of the head waters of said Wright's mill pond. It adjoined other lands of said Wright on the south, and has not since been severed therefrom. On the west it was divided by the patent line from lands of Francis Turpin from whom the defendant ultimately took title.

In 1813, Joshua Wright died testate, seised of a tract of seven hundred and fifty acres of land, including that portion of "Eashum's Venture" which he had purchased from Abel Tull. He devised all of his lands to his widow for life, with remainder

to his three sons, Turpin, Jacob and Charles. The widow conveyed to the three sons, and the said Turpin and Jacob then conveyed the said tract in *toto* to Charles.

In 1854, the said Charles Wright conveyed the same in *toto* to Josiah L. Haines. Shortly afterwards, the said Haines conveyed to Josiah Truitt all that portion thereof lying on the west side of Wright's mill pond, including the said pond, branch, etc., containing about two hundred acres, and also including the *locus*. In 1866, the said Truitt died testate, devising the said tract, so acquired from Haines, to Josiah J. Truitt, the plaintiff. The plaintiff subsequently resided thereon for upwards of twenty years, and it was afterwards occupied by his tenants until about thirteen years ago, since when the arable land only has been rented.

The plaintiff claimed to have reserved the *locus* for the growth and profit of the timber thereon, it not being tillable on account of its broken and irregular contour; that his possession thereof had been continuously maintained since 1868, when the title was vested in him; and that his ownership had never been disputed until the commission of the trespass by the defendant for which this action was instituted. He also claimed ·to have had a conversation with the defendant and asserted his ownership before any timber standing upon the *locus* was cut.

The defendant claimed title from an order of the Orphans' Court made on December 17, 1832, assigning lot No. 3 of the lands of Francis Turpin, deceased, to John Gibbons, assignee of Francis B. C. Turpin, the eldest son, the same "being a part of a tract of land called Turpin's Beginning, and part of a tract called Tull's Addition, and part of a tract called Eashum's Venture," and containing one hundred and twenty acres. The said lot, as surveyed in that proceeding, extended from the Mason and Dixon state line across the patent line of Eashum's Venture "to Wright's mill pond; then up and with the said mill pond and the middle and run of the branch * * * to Wallace's mill dam." It included the *locus*. Defendant's surveyor testified that he endeavored to trace the title farther back, and found the patent of Tull's Addition and Eashum's Venture, but could not find the patent

of Turpin's Beginning; also that he was unable to make any beginning of these old patents or place them on the lands.

In 1837 Gibbons conveyed to Downing and Wallace by deed containing the same courses and distances as in the aforesaid assignment to him by the Orphans' Court, to which the said deed refers.

The said premises were subsequently, and at different times, conveyed to Thomas Wallace, William L. Lowe, Andrew J. Vincent, George Lowe, George W. Smith, John H. Kinder, and William L. and John F. Tull. The said Tulls conveyed the same to the defendant by deed dated December 19, 1911. None of said deeds contained any courses or distances, but gave only a general description of the premises by naming the adjoining owners.

In December, 1911, the defendant sold all of the timber upon the land which he claimed to have purchased of the Tulls, including the *locus*, to John G. West.

Shortly after having purchased said timber, and before cutting the same, the said West was informed by his workmen that the *locus* belonged to the plaintiff.

Whereupon he made inquiry of the plaintiff, who replied claiming the ownership thereof, and the said West then instructed his workmen not to cut the timber then standing on the *locus*. The line dividing the same was plainly defined by the difference in the height of the timber standing on either side thereof.

Some time afterwards, one of the said workmen by mistake cut a few trees on the *locus*.

The plaintiff then had the line surveyed, and cut out, and caused notices to be posted along the same forewarning all persons from trespassing.

Shortly afterwards, the defendant also posted other trespass notices along the said line.

In January, 1913, the defendant employed workmen to cut the timber standing on the *locus*, and did not desist from cutting the same until the said workmen were restrained by an order of the Court of Chancery.

The defendant is a resident of the State of Maryland.

This suit was instituted a short time after the said cutting began.

At the conclusion of the plaintiff's testimony, counsel for defendant moved for binding instructions in favor of the defendant, for the reasons as stated in the following brief of defendant:

BRIEF OF DEFENDANT ON MOTION FOR BINDING INSTRUCTIONS.

The ground of the motion is, that there is no proof of actual possession and that, assuming the plaintiff had shown that there was a survey made, yet it did not constitute such an act as would make it actual possession, and there must be a disseisin; that the fact of proof of adverse possession with a color of title and no adverse possession being shown on the other side constituted possession in the defendant; that where defendant has a color of title, and is in the actual possession, then there must be a disseisin by the plaintiff before he can bring his action of trespass. If there is no disseisin he must bring his action of ejectment.

Open and visible possession and actual occupancy, of land, is generally held to be notice to all the world not only of his possession itself, but of his right, title and interest, whatever it may be of his possession. *Uhl v. May*, 5 *Neb.* 157; *Buck v. Holloway's Devisees*, 2 *J. J. Marsh.* (*Ky.*) 180; *Russell v. Sweezey*, 22 *Mich.* 235.

The possession must be actual, open, notorious, and visible, and must be distinct and not equivocal, occasional or for a special or temporary purpose.

Possession of land, to be notice of title, must be actual, not constructive. *Webster v. Van Steenbergh*, 46 *Barb.* (*N. Y.*) 211.

Adverse possession without right, if notorious and exclusive, constitutes a disseisin. *Melvin v. Proprietors of Locks and Canals*, 5 *Metc.* (*Mass.*) 15, 38 *Am. Dec.* 384.

It is the divesting of the owner of real estate of his seisin and possession and substituting the ownership and possession of the disseisor. *Clapp v. Bromagham*, 9 *Cow.* (*N. Y.*) 530.

Dissesin is the taking and holding of an exclusive and hostile possession of another's property without submitting to his rights or acknowledging his claims. *Kinsell v. Daggett*, 11 *Me.* 309.

Actual force is not necessary to constitute a disseisin; but open and exclusive possession accompanied with acts of ownership manifesting an intention to hold the whole estate is sufficient. A notorious adverse possession is a constructive ouster. *Parker v. Locks and Canal*, 3 *Metc.* (*Mass.*) 91, 37 *Am. Dec.* 121.

PENNEWILL, C. J., delivering the opinion of the court:

The court are asked to direct the jury to return a verdict for the defendant on the ground that it appears from the undisputed testimony in the case that the plaintiff was not in the actual possession of the strip of land in question at the time the alleged trespass was committed, and on the further ground that the defendant has shown an adverse holding and possession, by himself and those under whom he claims, for more than twenty years.

[1] It is undoubtedly the law of this state, and is laid down by all the cases, that in order to recover in an action of *quare clausum fregit* the plaintiff must show to the satisfaction of the jury that he was in the actual possession of the premises where the trespass is alleged to have been committed, at the time of the trespass. *Pennington v. Lewis*, 4 *Penn.* 447, 56 *Atl.* 378; *Quillen v. Betts*, 1 *Penn.* 53, 39 *Atl.* 595; *Daisey v. Hudson*, 5 *Harr.* 320; *Inskeep v. Shields*, 4 *Harr.* 345; *Clark v. Hill*, 1 *Harr.* 335; *Hunter v. Lank*, 1 *Harr.* 10; *Clendaniel v. Bennett*, *ante*, 86 *Atl.* 313; *Bartholomew v. Edwards*, 1 *Houst.* 17.

In the case of *Daisey v. Hudson*, Chief Justice Booth charged the jury as follows:

"That the action being for a trespass to real property, it could be maintained only by a person in the actual and immediate possession of the premises at the time the trespass was committed. The action is for an injury to the possession; and the form of remedy is not merely arbitrary, but necessarily arising from the nature of the injury."

To the same effect are the other cases in which the question has arisen, and there can be no doubt, therefore, about the law In order to recover in such an action as the present one, th

plaintiff must have been in actual possession of the premises at the time of the alleged trespass.

[2]   But while this is the general principle of law applicable to cases of trespass to real property, the question of what amounts to actual possession is not so well settled.   It is clear, however, from the authorities, that this question must depend somewhat upon the character of the land in dispute, the purpose for which it is used, and the condition in which it is permitted and desired to remain.

[3]   It has been decided in this state that "actual possession" does not mean that the land shall be inclosed, or that the boundaries shall be indicated by fences.   *Inskeep v. Shields,* 4 *Harr.* 345;  *Pennington v. Lewis,* 4 *Penn.* 447, 56 *Atl.* 378.

In the last mentioned case the court said: "Inclosure of the land is not necessary to such possession;  it may be proved by acts of ownership on the part of the plaintiffs."

[4]   Such being the law, the important question raised by defendant's prayer is, were there any acts of ownership on the part of the plaintiff in the case at bar that would prove his actual possession of the land at the time of the trespass?

Manifestly, in the determination of this question there must be a reasonable application of the law to the facts of the particular case.   Such acts of ownership as would be required in one case would not be required in another.   For example, if the land in dispute is tillable land, or even cleared land, it might be reasonably expected that some acts of husbandry would be performed from time to time in respect thereto by one claiming to be the owner.   Even if it be wooded land, containing such wood as is commonly used for firewood, it might be reasonable to expect the owner to do some cutting at times.   But there would be a different situation, and a different requirement, if the land was entirely occupied by standing timber of such character as would become more valuable as the years go by, and the keeping of which intact might be a good investment.   All of us know, or have known, of such tracts of timber, especially of pine and oak, which was mainly the kind standing on the land in question. And doubtless some of us know of tracts of pine timber in this

Opinion.

county which have not been touched by the hand of man for a great many years. They have simply been allowed to grow and become more valuable with the lapse of time. Some of them were never inclosed, and do not have to be in order that the owner may have possession. They could not of course be tilled, and it was not desired that they should be cut in any part or to any extent. What, then, could the owner be expected to do in the natural and usual order of things with respect to such lands? Nothing, we submit, unless he had cause to believe that some other person intended to enter upon them, with or without claim of title, for the purpose of cutting the timber. Under such circumstances the natural and reasonable thing for a prudent owner to do to protect his interests would be to inform the person intending to enter of his ownership, if he could do so, or to post notices on the land warning all persons off; and if he has reason to believe that the boundary line between his land and the land of an adjoining owner is questioned, he would naturally cause the land to be surveyed, so as to remove all question about the boundaries. Those acts, according to the plaintiff's testimony, were performed. The plaintiff testified that he informed the defendant when he was endeavoring to sell the standing timber, and before any trespass had been committed, that he owned the strip of woodland; and he also testified that he had the land surveyed and notices posted thereon before the trespass, and also at the time of the trespass—when it had just begun, and when very few of the trees had been cut of the great number that afterwards were cut. These were open and public acts, and such as an owner, and only an owner, would be apt to perform. They are therefore acts of ownership, and indicate, when performed, that the doer is the owner of the land. And, moreover, they are acts which would not occur to any owner of such land as is involved in this suit to perform, unless he had reason to believe that some one questioned his title and possession or intended to enter upon his lands.

The defendant relies with much confidence upon the case of *Clark v. Hill*, 1 *Harr.* 335, and contends that it is upon all-fours with the present case.

In that case the only act of ownership exercised by the plaintiff was that his tenant entered, by the plaintiff's order, and cut a few cords of wood. The court assumed that this was done for the purpose of placing the plaintiff in a position to treat the defendant as a trespasser. We cannot make any such assumption in the present case, and moreover, we do not know from the report of the *Clark-Hill case*, what was the character of the strip of intervening woodland to which both parties claimed title. It may have been such wood as is commonly used for firewood or cordwood. It certainly does not appear that it was covered by such kind of standing timber as the undisputed testimony shows the land in question contained.

It will be observed also that the court in the *Clark-Hill case* approved and repeated the decision in *Hunter v. Lank*, 1 *Harr.* 10, wherein it was held that a piece of woodland lying between two parties, *both of whom claimed it*, made a mixed possession, and the law adjudged it to him who had the legal title. It does not appear what, if any, acts of ownership were exercised by the plaintiff in the latter case. And it may be further noted that in the *Clark-Hill case* the defendant was unquestionably in possession, as shown by acts performed before the alleged trespass. He "had exercised frequent and unequivocal acts of occupancy and ownership." It cannot be contended that the defendant in the present case is in such a position. He had exercised no act of ownership at all before the alleged trespass.

In the recent case of *Clendaniel v. Bennett*, ante, 86 *Atl.* 313, tried in this county, the defendant was in a like situation. He was in actual possession by reason of a fence which he had erected and maintained for twelve years and down to the alleged trespass, uninterruptedly, and this fence took in the land in dispute.

In *Quillen v. Betts*, 1 *Penn.* 53, 39 *Atl.* 595, the court said, in speaking of acts of ownership: "It must be a claim, not a mere statement. Pointing out the borders of his land indicates an act of ownership."

In the case of *Bartholomew v. Edwards*, 1 *Houst.* 17, the court, speaking of adverse possession, said: "No act that does not amount in itself to an assertion of right to the soil could be evi-

dence of possession of the soil." Certainly the acts performed by the plaintiff in the present case amounted to the assertion of right to the soil, and were therefore evidence to be submitted to the jury tending to prove plaintiff's possession.

[5] There is one important question respecting "actual possession" in trespass cases, which we think has never been expressly considered by the courts of this state, and it is this: If the plaintiff has shown a good legal title to a farm the lines or boundaries of which embrace the land in question, and the farm has been in the actual and physical possession of the owner or his tenant continuously for many years and down to' the time of the alleged trespass, may not the owner, or his tenant, as the case may be, maintain an action of trespass to a part of the farm which has been permitted to grow up in timber, even if no visible acts of ownership have been exercised as to the particular piece of growing timber until the owner or tenant had reason to believe that some one intended to enter thereon and cut the timber? That is the present case, if the plaintiff has title to the adjoining farm, which is not questioned, and the jury believe the boundaries or lines thereof include the woodland in dispute.

Will not the actual possession of the farm constitute a possession of every part of it that is not manifestly abandoned, or in the possession of the defendant, and especially a part composed of a tract of woodland which has not been disturbed or touched by any one for many years, and not desired to be, but has been allowed to grow up in valuable timber? We are inclined to believe that the possession of a farm under such circumstances is the possession of the woodland, and that no visible and physical acts of ownership need be exercised, at least, until an entry by another is threatened or apprehended. If this is not the law, then the owner of a tract of growing timber must either inclose it or cut the timber from time to time, in order to have actual possession. And if he cannot maintain an action of trespass like the present one, without showing the performance of such acts, he is without adequate remedy for the wrong. The action of ejectment would furnish no proper redress after the trespass is committed—the timber cut, in a case where the timber is of great value and the land of hardly any value at all.

We hold, as the result of our examination of the authorities, and will so charge, that by "acts of ownership", in cases of trespass to real estate, the law means such acts as would and should be exercised by an owner with respect to his land, having regard to the character of his land, the purpose for which it is used or kept, and the conditions existing at the time of the alleged trespass.

[6]   We think there is some evidence of the plaintiff's possession at the time of the alleged trespass which should be submitted to the jury, as has been done in other cases of trespass to real property in this state.  And, moreover, in the case of *Hunter v. Lank*, which the court in *Hill v. Clark* "approved and repeated", it was said: "Trespass is an injury to the plaintiff's possession; he must, therefore, show himself in possession, *though this need not always be an actual exclusive possession.  Where woodland lies between two persons, both claiming it, it is a mixed possession, and the law adjudges it to him who has the legal title.*" This early case has never been overruled.

We will submit to the jury the question of possession, to be determined by them under all the evidence, and the instruction of the court upon the law.

[7]   It has been argued that because the defendant was the party in actual possession of the premises at the time of the alleged trespass, by cutting the trees, the plaintiff cannot maintain his suit.  If that fact constituted a barrier to the action, it might mean that a trespasser by his very act of trespass could gain possession of the land and prevent the owner from maintaining his action because he was not at the time in physical possession of the premises.  The same contention might be made in very many cases, but the law does not permit a trespasser to legally oust an owner from the possession of his lands so as to prevent him from maintaining an action for injury to his possession.  We do not mean to say that the defendant in this case was a trespasser, because that is for the jury, but we mean that the contention made would logically lead to the result indicated.

There is another circumstance, outside of the law perhaps, which has had some weight with the court in disposing of this

prayer for binding instructions, and it is this: the importance of a determination of the case upon the merits at this time. The trial will entail a great deal of expense upon the county, as well as upon one or the other of the parties. The material witnesses have all testified in the case, and some of them have reached a very advanced age. If the case should be taken from the jury another action would in all probability be instituted, with additional costs to county and litigants. In the very nature of things some of the important witnesses who have given testimony here would not be in attendance at a future trial. There is indeed every reason why the important issue involved in the case, viz., the title to the land in dispute, should be settled now, so that all parties may know their rights, and be relieved of future litigation, trouble and expense.

We do not mean that these considerations affect in the slightest degree any principle of law involved, or that any rule of law is to be disregarded in order to effectuate such an end; but we do mean that the accomplishment of such purpose assists very materially in resolving any doubt in our minds respecting this prayer, in favor of the submission of the case to the jury for their determination upon the facts and the law.

[8] In respect to defendant's other ground for binding instructions, viz., proof of adverse possession for more than twenty years, we have only this to say: That whether or not a title by adverse possession has been proved is a question to be determined by the jury and not by the court. It is one of the questions in dispute, upon which the evidence is conflicting, and is, therefore, a matter for the jury to decide.

For the reasons given we decline to instruct the jury to return a verdict in favor of the defendant.

As we have already said, there being some evidence tending to show that the plaintiff exercised acts of ownership over the land in dispute at the time of the alleged trespass, we will submit to the jury for their determination the question whether the plaintiff was or was not then in the actual possession of said land, with instructions from the court as to what constitutes "acts of owner-

ship," within the meaning of the law, in an action of trespass to real property.

We may say in conclusion, that while it is settled law in this state that the plaintiff, in order to maintain an action of trespass *quare clausum fregit*, must be in the actual possession of the land in dispute at the time of the trespass, and while we are bound by the prior decisions of this court upon the question, such does not seem to be the law in many of the states. 38 *Cyc*. 1005.

The text in *Cyc*. is as follows:

"The gist of trespass is injury to the possession, and in England the rule has always been that actual possession was necessary, and the doctrine has been followed to some extent in this country. But the general rule in America is that either actual or constructive possession is sufficient to maintain trespass."

In support of the text cases are cited from many states. We find upon examination that in two states, Georgia and Kentucky, constructive possession has been made by statute sufficient to maintain trespass to real property, but in many others the courts have declared, in the absence of any statute on the subject, that the possession required might be either actual or constructive.

In *Brown v. Hartzell*, 87 *Mo*. 564, the court said: "Possession is constructive when the property is in the custody and occupancy of no one, but rightfully belongs to the plaintiff. *In that case the title draws to it the possession.*"

But if the plaintiff relies solely on possession, claiming no legal title to the land, the possession must be actual. 38 *Cyc*. 1006, 1007.

In *Tustin v. Sammons*, 23 *Pa. Super. Ct.* 175, the court said: "In *Wilkinson v. Connell*, 158 *Pa*. [27 *Atl*. 870], the ground upon which a plaintiff in trespass must base his right to recover is clearly stated: 'To enable a plaintiff to maintain this action [trespass *quare clausum fregit*] he must have the possession, actual or constructive, of the close which he alleges has been invaded. If the land entered by the trespasser is unimproved, possession will be presumed to accompany the title, and this constructive possession will support an action. If the land is improved, that

fact shows that it is in the actual possession of some one. In such case the plaintiff cannot rest on his title but must show his possession.' 'Possession of the *locus in quo* of a trespass is the test of the right to sue for it. For an injury to wild land the owner may maintain an action by showing his title to it, but this is on the principle that the law gives him a constructive possession. When another person has the actual occupancy, the exhibition of a paramount title is not sufficient to sustain trespass, either against the disseisor or against anybody else'."

In the two Pennsylvania cases mentioned the defendant was in the actual possession of the land in dispute, and for that reason the court held the plaintiff could not succeed.

Binding instructions for the defendant refused.

## Plaintiff's Prayers.

The plaintiff prays the court to charge the jury as follows:

1. If the jury should find that the woodland lying between lands of the plaintiff and defendant were claimed by both at the time the suit was brought, it is a mixed possession, and in that case the ownership thereof belongs to him who has the legal title. *Hunter v. Lank*, 1 *Harr.* 10.

2. Where a deed calls for natural and well-known boundaries, which are inconsistent with the description given in the deed by courses and distances, the lines go to these boundaries, disregarding the courses and distances. *Hunter v. Lank*, 1 *Harr.* 10; *Nevin v. Disharoon*, 6 *Penn.* 278, 66 *Atl.* 362.

3. If the jury should find that the plaintiff has proved himself in possession merely of the property, and an entry was made upon it by the defendant, it would constitute the latter a trespasser, unless he could prove on his part a title to the premises. *Bartholomew v. Edwards*, 1 *Houst.* 22.

4. Should the jury believe that the plaintiff had held the said timber for upwards of twenty years for its growth and profit, the same publicity of acts of ownership is not required to constitute the possession, as in the case of arable lands. 38 *Cyc.* 1005.

5. If the jury believe that the plaintiff posted trespass notices around his timber land, or surveyed the same and had the boundary line defined and marked before the alleged trespass was committed, it would constitute an act indicating ownership and possession. *Quillen v. Betts*, 1 *Penn.* 53, 39 *Atl.* 595.

6. That if the plaintiff himself or through his agents or workmen committed the trespass he would be guilty. *Quillen v. Betts*, 1 *Penn.* 53, 39 *Atl.* 595.

7. That a survey of land made in pursuance of an order of the Orphans' Court is not conclusive of the legal title to the lands embraced therein, and does not preclude adjoining owners of said lands from disproving the accuracy of such survey.

## DEFENDANT'S PRAYERS.

The defendant prays as follows:

*First.* If the jury should find from the evidence that the plaintiff was not in actual possession of the lands in dispute at the time of the alleged trespass, the plaintiff cannot recover in this action.

*Second.* Actual damages cannot be speculative or conjectural, but must be specifically proven.

*Third.* The jury should render a verdict for that party on whose side there is the preponderance or greater weight of the evidence.

*Fourth.* That the court instruct the jury to render a verdict for the defendant.

PENNEWILL, C. J., charging the jury:

Gentlemen of the jury:—This is an action known in the law as *quare clausum fregit*, and it is brought by the plaintiff against the defendant for the breaking and entering of his close or land, and the cutting of trees thereon.

The plaintiff claims that the defendant, by himself, his agents or servants, entered upon his lands situated in Seaford Hundred in this county and cut a great many timber trees standing thereon,

of the aggregate value of nine hundred dollars, and to recover that amount he has brought this suit.

The case grows out of a dispute as to the correct boundary or division line between the adjoining lands of the plaintiff and defendant.

To support his action the plaintiff must show to the satisfaction of the jury, by a preponderance of the evidence, that at the time the alleged trespass was committed he had the actual possession of the land. The action is for an injury to the possession. *Quillen v. Betts*, 1 *Penn.* 53, 39 *Atl.* 595; *Pennington v. Lewis*, 4 *Penn.* 447, 56 *Atl.* 378; *Daisey v. Hudson*, 5 *Harr.* 320; *Clark v. Hill*, 1 *Harr.* 335.

The plaintiff claims to have shown that he had, at the time of the alleged trespass, such possession, and he also claims that he has shown by a preponderance of the evidence a legal title to the land in dispute.

Actual possession may be proved by the exercise of acts of ownership, and a legal title to the premises may be shown either by a chain of paper title, that is by deeds, plots, etc., or by an adverse possession.

[9, 10] In this case the plaintiff claims by paper title, the evidences of which have been introduced in evidence, and he denies any title in the defendant.

The defendant claims title to the land in dispute both by paper title and by adverse possession, and we charge you that if the defendant has proved a good legal title in himself either by paper title or by an adverse possession, he is not guilty of the trespass charged, and your verdict should be in his favor. In order to acquire title by adverse possession, the possession must be exclusive, adverse to the rights of all others, and continued for at least twenty years. But it is not necessary that the boundaries should be indicated by fences.

[11, 12] In *Bartholomew v. Edwards*, 1 *Houst.* 22, the court said: "If * * * the plaintiff had proved that he was at the time in possession of the" land where the trespass was committed, "he would be entitled to recover damages for the trespass without further proof of title, unless the defendant had

proved a better title to the premises, or a possession in common with the plaintiff. * * * In the latter case (that is in case of a mixed possession, or a common possession of both parties), the parties were both put upon their proof of title, and that party must prevail who had proved the legal title to be in him. In a case of common possession of land by both parties to the suit, the law adjudges the rightful possession to him who had the legal title, and no length of time of such holding could give a title by possession as against such legal title; but an independent, separate, and adverse holding, under an exclusive claim, continuously asserted and maintained for twenty years, was itself a good title."

As we have already said, to sustain the action of trespass to real property, there must be an actual possession. A constructive possession is not sufficient. But an actual possession may be shown by acts of ownership, and what are acts of ownership, within the meaning of the law, depends somewhat upon the facts of the particular case. The particular acts of ownership required to establish actual possession in one case would not be required in another. For example those required with respect to woodland might not be the same as those required in respect to tillable land. There must be acts of ownership exercised by the plaintiff to prove actual possession and enable him to maintain his action, but the character of such acts will depend somewhat upon the character of the land upon which the alleged trespass was committed, the purpose for which the land was used or kept, and the conditions existing, at the time of the alleged trespass. Bearing in mind these things, it is for the jury to say whether or not the plaintiff was in actual possession of the land in dispute at the time of the alleged trespass; that is, whether he had exercised such acts of ownership as are sufficient to satisfy you that he was in actual possession. If he has not shown this essential fact he cannot recover.

[13] We charge you, as requested by the plaintiff, that where a deed calls for natural and well-known boundaries, which are inconsistent with the description given in the deed by courses

and distances, the lines go to these boundaries, disregarding the courses and distances.

[14] We also instruct you that if the defendant, by himself, or through his agents or workmen, committed the trespass, he would be guilty.

[15] A survey of land made in pursuance of an order of the Orphans' Court, when admitted in evidence, is to be considered by you in connection with the other evidence in the case, as other records are, and given such weight and effect as you think it is entitled to.

Now, gentlemen, should you be satisfied by a preponderance of the evidence that at the time of the alleged trespass the plaintiff was in actual possession of the land in question, your verdict should be for the plaintiff, unless you are also satisfied from the evidence that the defendant has established his right by a good and legal paper title, or by an adverse possession such as we have instructed you is required in order to give title.

If you are not satisfied that the plaintiff was in the actual possession of the land at the time of the alleged trespass, your verdict should be for the defendant. And your verdict should be for the defendant if you believe that at the time of the alleged trespass he was in the actual possession of the land, or had the title thereto.

[16, 17] If you should find in favor of the plaintiff, your verdict should be for such sum as you believe from the testimony the timber cut from the land was actually worth when standing and before it was cut. Actual damages cannot be speculative or conjectural, but must be specifically proved.

If you should find in favor of the defendant, your verdict should be not guilty.

[18] We say to you, as requested by the defendant, that the jury should render their verdict for that party in whose favor is the preponderance or greater weight of the evidence.

In conclusion we say, the case is now in your hands for determination under the evidence and the law. Upon all the evidence, applying thereto the law, you are to determine whether the verdict shall be for the plaintiff or the defendant.

You have been exceedingly attentive during the whole trial, which has occupied several days, and surprisingly so, considering the character of the testimony, which consists for the most part of deeds, plots and other record or written evidences of title. This speaks well for the faithful performance of your duty, and we doubt not your verdict will be the result of a careful and conscientious consideration of the case.

Verdict for plaintiff.

Whereupon counsel for defendant moved for a new trial and in arrest of judgment; the main ground assigned in said reasons being that the plaintiff did not prove at the trial actual possession of the premises, where the trespass was alleged to have been committed, at the time of the trespass.

After hearing argument upon the motion for a new trial the court rendered the following opinion, refusing said motion:

PENNEWILL, C. J., delivering the opinion of the court:

Since the argument on Friday of last week the court have given the defendant's motion for a new trial careful consideration. Indeed, we may say that the court have devoted much time and thought to the matter since the motion was made at the February term. The same question is involved in the motion for a new trial that was involved in the motion for binding instructions made and argued at the trial of the cause, and it does not seem to us that the recent argument is any more convincing than the earlier one in which the Delaware cases were cited and commented upon at length.

The cases cited on Friday from other states, on both sides, do not seem to be in point or at all helpful in the decision of the question now before us.

In the case of *Odd Fellows v. Turman*, 3 *Cal. Unrep. Cas.* 546, 30 *Pac.* 966, upon which the defendant so strongly relies, it was held that a survey of title (wild, unoccupied) land, and a notice warning persons therefrom, did not prove or constitute actual possession. But in that case there was no proof or claim of title in the plaintiff. He relied entirely on possession.

We do not wish to repeat here the opinion delivered at the trial on the motion for binding instructions. We do, however, make that opinion the opinion of the court in disposing of the present motion, so far as the same may be applicable, adding thereto only the following observations suggested by the recent argument.

[19] It is true that the testimony of the plaintiff respecting his conversation with the defendant in the Town of Laurel was contradictory and uncertain as to the time. it was held, and also as to the time the survey was made and the notices posted; and it is also true that the testimony of the witness Lankford was likewise contradictory and uncertain in respect to the survey and notices. But it is not for the court to say what part of their testimony was true and what untrue. That was a matter entirely for the jury. The testimony was certainly material, and for the purposes of this motion the plaintiff is entitled to have the construction that is most favorable to himself placed upon that testimony by the court.

[20] In some of the leading Delaware cases the plaintiff failed to recover because the defendant was unquestionably in possession at and before the alleged trespass. The defendant in the present case insists that he was in a like position. But the testimony does not show that the defendant was ever in possession before the cutting of the trees which is the trespass complained of, and for which the action is brought. Neither does the testimony show that any prior owner, through whom the defendant claims title, was ever in actual possession of the strip of woodland in dispute.· The fact or claim that the defendant cut the trees under color of title, and was therefore in lawful and not tortious possession, does not impress us very much. Any trespasser might claim to be acting under color of title, but he would be none the less a trespasser, we think, if he entered upon the lands of another to which he had no title and cut all the valuable timber standing thereon.

The jury must have found that the defendant had no title to the woodland, otherwise their verdict, under the instructions of the court upon the law, would have been different. The posses-

sion of the defendant, spoken of in the cases as sufficient to prevent recovery by the plaintiff, is not such a possession as the defendant had in this case.

[21] The defendant contends that the declaration that he was owner of the woodland, made to the plaintiff in Laurel, together with the attempt to sell the timber, and the actual sale of the timber to West, were acts of ownership sufficient to show that he was in possession. If that be so, then there must have been a mixed possession, because there is testimony that the plaintiff, on his part, performed acts in respect to the land, before the cutting, which quite as clearly and unequivocally showed that he was in possession. In such case the law laid down in *Bartholomew v. Edwards*, 1 *Houst.* 22, as to mixed or common possession applies; and the present case would be strikingly analogous to *Hunter v. Lank*, 1 *Harr.* 10, which has never been overruled, and is the law of this state. "Where woodland lies between two persons, both claiming it, it is a mixed possession, and the law adjudges it to him who has the legal title." *Hunter v. Lank*, 1 *Harr.* 10.

[22] If the acts of neither party constituted actual possession, then the land was unoccupied land and in the physical possession of no one. In such case it would seem to be reasonable to hold, in conformity with the law of Pennsylvania and many other states, that *the title draws to it the possession*, and that the plaintiff may recover in an action of trespass if he has the immediate right and title to the land. We do not think this particular question has ever before been distinctly ruled upon by the courts of this state, and we feel therefore that our conclusion is not in real conflict with any prior decision of this court.

At any rate, we are convinced that if such is not the law the owner of timber land in this county will be without any adequate remedy when his timber is cut by some one who has no title at all to the land. In many such cases there will be a wrong for which there is no adequate remedy, and that is a condition which the law not only does not favor but seeks to prevent, to make impossible.

The question before us, under the decisions of the Superior

Court, may be a close one, but it is certainly not free from doubt, and for that reason we felt constrained to refuse the motion for binding instructions. For the same reason we feel compelled to refuse the motion for a new trial.

We will be glad if a writ of error is taken in this case, for we think there should be a final authoritative decision of the important question here involved by the Supreme Court which may declare the law without being embarrassed, as we are, by the prior decisions of the lower court.

The motion for a new trial is refused.