[No. 18553.   Department Two.   October 10, 1924.]

C. VODRA DAVIS *et al.*, *Appellants*, v. FORD KENNEY *et al.*, *Respondents.*[1]

BOUNDARIES (14)—ESTABLISHMENT—AGREED LOCATION—EVIDENCE —SUFFICIENCY. Findings of a mutual mistake in the description of boundaries and that the parties agreed that existing fences constituted the true boundary, are not sustained where the fences included lands not owned by the grantors or even claimed by the grantees.

ADVERSE POSSESSION (24) — HOSTILE ENTRY — MISTAKE AS TO BOUNDARIES—EVIDENCE—SUFFICIENCY. Findings of adverse possession of lands to the line of existing fences, which were not on the true boundary line, are not sustained, where the party erecting the fences did not pretend they were on the line and no such claim was made at the time of the conveyance, or at all until shortly after commencement of the action to establish the boundaries.

[1]Reported in 229 Pac. 311.

Appeal from a judgment of the superior court for Kitsap county, Dykeman, J., entered October 24, 1923, in favor of the defendants, in an action to establish a boundary line and to quiet title, tried to the court. Reversed.

*C. B. W. Raymond* and *Chas. M. Fouts,* for appellants.

*F. W. Moore,* for respondents.

FULLERTON, J. — On April 6, 1907, one E. L. Michaelson conveyed to the respondent Ford Kenney, by warranty deed, a tract of land bounded and described as follows:

"Beginning at the quarter section post on section line between sections one and two, Township 23 North, Range 2 East, thence running north 820 feet along the section line between said sections one and two, thence running east 364 feet, thence south 17 degrees west 1277 feet to section line between said sections 1 and 2, thence north 406 feet and 3 inches to place of beginning, containing 5 acres more or less, subject to a county road."

On January 29, 1912, Kenney and wife conveyed a part of the tract to M. R. Noftsger, by the following description:

"Beginning 820 feet north and 364 feet east of the quarter section corner post on the section line between sections 1 and 2, Township 23 North of Range 2 East W. M., running thence south 17 degrees west 115 feet, thence west 183.19 feet, thence north 109.97 feet, thence east 216.81 feet to the place of beginning, containing one-half of an acre more or less, subject to the right of way for a public road now established along the north side of said tract."

The land, at the time of its purchase by Noftsger, was unimproved, and Noftsger, when he entered into possession of the tract purchased by him, proceeded

to inclose it by fences and erect a store building thereon. There was at the time on the east side of the tract a fence following substantially the diagonal course of its east boundary, and Noftsger seems to have assumed that the fence marked the true east boundary of the tract. In constructing his fences he used that fence as a guide and made measurements by which he constructed the remainder of the fences. Even then, according to his own testimony, he did not attempt to place his fences on the lines of his property, but so constructed them as to leave them wholly upon his own land.

On October 7, 1920, Noftsger conveyed the property by warranty deed to the appellant C. Vodra Davis. The description in the deed followed the description in the deed from the respondents to Noftsger. The appellants took possession of the property and sought to change the boundary fences so as to make them correspond with the boundaries of the tract as outlined in the deeds. To this change the respondents objected, whereupon the appellants began the present action, praying that the boundary line between the property conveyed to them and the respondents' property be fixed and determined, and that the title to the property within the boundaries called for by the deed be quieted in them.

The respondents, in their answer to the complaint, set up a mutual mistake in the execution of the deed, alleging that the boundaries of the land as marked by Noftsger's fences were agreed upon as the land conveyed by the deed, and that they had been in open, notorious and adverse possession of all of the tract described in the deed and not included within the fences for a period in excess of the statute of limitations, under a claim of right. At the conclusion of the evidence, the trial court took the view outlined in the

answer, entering a decree, the part of which bearing upon the particular matter reads as follows:

"It is further ordered, adjudged and decreed by the court, that the property and real estate, of which possession was delivered to M. R. Noftsger under deed dated the 29th day of January, 1912, made to him as grantee by the defendants, Ford Kenney and Grace E. Kenney, his wife, and which was afterwards by the said M. R. Noftsger and Mattie E. Noftsger, his wife, conveyed to plaintiffs herein is correctly described as follows:

"Beginning at a point which is North 815.76 feet and East 384.55 feet from the quarter corner section between sections 1 and 2, Tp. 23, N. R. 2 E. W. M.; running thence South 17°36'33" West 114.71 feet; thence North 88°12'32" West 183.22 feet; thence North 1° 00'21" West 105.58 feet; thence South 89°28'23" East 220.20 feet to the place of beginning, subject to a roadway 15 feet wide for a public road along the North line of said tract, all in Kitsap County, Washington.

"That said M. R. Noftsger accepted same as being the property conveyed by said deed, and the plaintiffs herein have by their acts recognized the said property as being that conveyed by the said M. R. Noftsger and Mattie E. Noftsger, his wife, to them, and it is ordered that the description in the deed mentioned in paragraph I of plaintiff's complaint, and which was filed in the Auditor's office of Kitsap County on the 1st day of March, 1912, and recorded in book 76 of deeds, page 17, and the description in the deed mentioned in paragraph III of plaintiff's complaint, dated the 7th day of October, 1920, and made by M. R. Noftsger and Mattie E. Noftsger, his wife, to the plaintiffs herein, filed in the Auditor's office in Kitsap County, the 25th day of October, 1920, and recorded in Volume 127 of deeds page 410, be reformed, and it is decreed that the said deeds conveyed the tract herein before described and no other, and the said plaintiffs, and each of them and all persons claiming or to claim it under them, be forever enjoined from setting up any claim of right or title by virtue of said deeds, or either of them, in

or to any other premises other than that hereinbefore particularly described, and the filing for record with the Auditor of Kitsap County of a certified copy of this judgment shall constitute a correction of both the above deeds so far as it affects any of the property of the defendants.''

It is our conclusion that the record affords no justification for the decree of the court. The description of the property as it is reformed by the court, speaking in round numbers, cuts off from the north side of the property a strip five feet wide and revests it in the grantors. This is now in a county road, but should the road be abandoned, or otherwise discontinued, the right of possession to it would vest in the grantors to the exclusion of the purchasers. It purports to vest in the purchaser a tract nineteen feet wide and one hundred and fifteen feet long, to which the grantors never had a shadow of title, not even a possessory right, the title thereto being at all times in a third person. The south line, instead of running due west and paralleling the north line, varies some three degrees therefrom. It cuts off from the west end and revests in the grantors a tract nineteen feet wide and one hundred and ten feet long, and varies the dividing line from a due north course to one bearing one degree west of such a course. Seemingly, there ought to be in the record some very clear and substantial evidence to justify the holding of the trial court, but this evidence we do not find. The grantors did not even lay claim to the strip taken from the north side of the property, nor did they pretend to own the added part on the east. The utmost of their claim was that the fences were constructed by agreement and that they had been in adverse possession of all the land to the south and west of the fences for the period of the statute of limitations. But Noftsger disputes these statements. He says that he alone erected the fences

and did not pretend to put them on the boundary lines, and that he always claimed that the calls of his deed, not the fences, marked his boundaries. Nor do we think the claim of adverse possession is substantiated. No question ever arose between the grantors in the deed and Noftsger as to the true boundary line. After the appellants purchased the property, the grantors for the first time overtly made the claim that the fences marked the boundaries, but this was but a short time prior to the institution of the present action. Adverse possession, it is true, will support a claim of title under the statute, but as we said in *Peoples Savings Bank v. Bufford,* 90 Wash. 204, 155 Pac. 1068:

"   .   .   .   it is not every possession that will start the running of the statute. There is a presumption attending always that one who enters into the possession of the property of another enters with the permission of the true owner, and holds in subordination to his title. The statute begins to run from the date of possession only when it is sustained by a hostile intent to claim adversely, or, where possession is taken by mistake, the intruder exercises such dominion over the property as to put the true owner upon notice of the hostile claim.   As is said in the books:

" 'The disseisor "must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest." ' 1 R. C. L. 693.

"In other words, a title by adverse possession, where land is claimed under mistake, 'cannot be decided as a matter of law, without resort to the facts of the particular case.' *Johnson v. Ingram,* 63 Wash. 554, 115 Pac. 1073.   The claim must be followed by acts which clearly evince a determination of permanent ownership. *Bowers v. Ledgerwood,* 25 Wash. 14, 64 Pac. 936.

"Where one enters upon land under a claim of right arising in or out of the chain of title, or under color of title, the entry is sufficient to start the running of the statute.   But where one enters with the permission of the true owner—and one who enters by

mistake having no intention to claim that which is not within the calls of his deed is upon no higher plane—the statute will not begin to run until the record owner has actual notice, or the land is put to such uses as to put him upon notice that the occupant is not a mere trespasser, but is asserting a hostile claim.''

The case cited collects the authorities on the question, and, under the rule there announced, there is no room for holding that in this instance any part of the land conveyed has revested in the grantors.

The trial court should have granted the prayer of the complaint. The judgment is therefore reversed, and the cause is remanded for further proceedings.

MAIN, C. J., BRIDGES, PEMBERTON, and MITCHELL, JJ., concur.