104 A.2d 908 (1954)
MARVEL et ux.
v.
BARLEY MILL ROAD HOMES, Inc.
Court of Chancery of Delaware, New Castle.
April 28, 1954.
Stephen E. Hamilton, Jr., Arthur G. Logan, and William Marvel, Wilmington, for plaintiffs.
Walter P. McEvilly and David Snellenburg II, of the firm of Killoran & Van Brunt, Wilmington, for defendant.
*910 BRAMHALL, Vice-Chancellor.
Plaintiffs are the owners of a certain tract of land situate on Barley Mill Road, Christiana Hundred, New Castle County and State of Delaware. The defendant is the owner of a tract of land adjoining the lands of plaintiff on the west. Plaintiffs and their predecessors in title have asserted a claim of title to an area of stream and woodland consisting of .63 acres of land, adjoining the lands of plaintiffs and defendant, and which plaintiffs and their predecessors in title thought was a part of the land conveyed by the predecessors in title of defendant to the predecessors in title of plaintiffs on May 25, 1916. Although the land in dispute adjoined the land conveyed and other lands of predecessors of defendant, it was not contained in the description set forth in that deed.
It was understood between the grantors and grantee, as evidenced by letter dated September 29, 1915, from Charles G. Rupert, predecessor in title of defendant, to Josiah Marvel, Sr., and as testified to by plaintiff Josiah Marvel, Jr., that each party would be responsible for the erection and maintenance of a division fence along the line separating the land retained by the grantors and the land conveyed by grantors to grantee, the grantees to erect and maintain the fence on the northern half of the tract and the grantors the fence on the southern half. Plaintiff Josiah Marvel, Jr., testified that his father caused a fence to be erected on the northern half of the boundary and that grantors caused a fence to be erected on the southern half of the boundary, including the land in dispute. No fence was erected on the boundary line as called for in the deed to plaintiffs' predecessor in title. Although there seems to have been some question in the minds of some of the witnesses as to whether or not the fence along the line of the disputed property was erected in 1916, or was there prior thereto, it is not disputed that after that time there was a fence of some sort separating the disputed property from the lands of grantors on the west and other lands on the south. Since evidence offered by plaintiffs to the effect that the fence along the line of the property in dispute was erected in 1916 as a part of the agreement between Charles G. Rupert and Josiah Marvel, Sr., is not disputed, I accept it as true.
At or about the time of the erection of the fence an organization known as the Brandywine Bridle Path Group, comprised of property owners in the neighborhood, was formed. The members of that group each agreed to provide for the group a bridle path through his or her land. In furtherance of this agreement, the predecessors in title of plaintiffs, at considerable difficulty and expense, provided a bridle path over a certain portion of their land, including the property in dispute. That bridle path was used by plaintiffs and adjoining landowners until the year 1924, and by Josiah Marvel, Sr., until his death in 1930. It is disputed as to whether or not the boundary fence ran entirely to the fence on the land of the adjoining landowner on the south, defendant contending that the fence stopped at a *911 point about 12 or 14 feet north of the line of the property on the south and then turned to the west, providing a lane approximately 12 or 14 feet wide for some distance to the west. In any event, there was a post on the line separating the disputed property from the property of the owner of land to the south, in line with a post at the end of the line separating the disputed property from the property of defendant. Plaintiffs' testimony was to the effect that there was a bar-gate at that point. The lane at the point of the gate was obstructed by saplings and honey-suckle, indicating that the lane had been impassable for a great many years.
Plaintiffs and their predecessors in title from 1916 to the present time treated the property as their own, using it for walks, picnics, cutting of wood where trees had fallen down, posting it against hunting, and attempting to provide thereon a refuge for game. Defendant asserts that plaintiffs' possession was not exclusive; that at different times the predecessors in title of defendant had entered the land in dispute for the purpose of obtaining water for stock; that the property in dispute was accessible from the lane above referred to which defendant contended adjoined the disputed property.
While there is some dispute as to many of the allegations of plaintiffs, there is no conflict as to many of the most important facts. Plaintiffs' predecessors in title purchased the land adjoining the property in dispute for the purpose of acquiring the stream on the disputed property and were under the impression that the property in dispute was included within the description of the property which they purchased. It was understood between the predecessors in title of both plaintiffs and defendant that a fence was to be erected on the property line. The testimony of Josiah Marvel, Jr., to the effect that a fence was erected on the line of the disputed property is not specifically denied. The bridle path was erected by the predecessors in title of plaintiffs under an agreement with other members of the bridle path group that each owner would erect a bridle path on his or her own property. The bridle path was maintained at the expense of the predecessors in title of plaintiffs and was used, among others, by the family of the predecessors in title of defendant.
There is no fixed rule whereby the actual possession of real property by an adverse claimant may be determined in all cases. It may be stated as a general rule that the claimants' possession must be such as to indicate their exclusive ownership of the property. Not only must his possession be without subserviency to, or recognition of, the title of the true owner, but it must be hostile thereto, and to the whole world. It has been declared that the disseisor "must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest." He must intend to hold the land for himself, and that intention must be made manifest by his acts. It is the intention that guides the entry and fixes its character. No particular act or series of acts is necessary to demonstrate an intention to claim ownership. Such a purpose is sufficiently shown where one goes upon the land and uses it openly and notoriously, as owners of similar lands use their property, to the exclusion of the true owner. The owner is, of course, chargeable with knowledge of what is openly done on his land and therefore calculated to attract attention. See Robin v. Brown, 308 Pa. 123, 162 A. 161; Bailey v. Carleton, 12 N.H. 9, 37 Am.Dec. 190. Plaintiffs must recover upon the strength of their own title; they cannot rely upon the weakness of defendant's title. Reed v. Short, 5 Terry 103, 57 A.2d 90; Pleasanton v. Simmons, 2 Pennewill 477, 47 A. 697.
In determining what will amount to an actual possession of land, considerable importance must be attached to its nature and to the uses to which it can be applied, or to which the claimant may choose to apply it. State on Complaint of Nelson v. Willoughby, 7 Boyce 83, 102 A. 983; *912 Truitt v. Osler, 4 Boyce 555, 90 A. 467; Nevin v. Disharoon, 6 Pennewill 278, 66 A. 362; Doe ex dem. Townsend v. Roe, 3 Boyce 78, 80 A. 352. As a general rule it will be sufficient if the land is so used by the adverse claimant as to apprise the community in its locality that it is in his exclusive use and enjoyment, and to put the owner on inquiry as to the nature and extent of the invasion of his rights, and this is especially true where the property is so situated as not to admit of permanent improvement. In such cases, if the possession comports with the usual management of similar lands by their owners, it will be sufficient. Neither actual occupation, cultivation, nor residence is necessary where neither the situation of the property nor the use to which it is adapted or applied admits of, or requires, such evidences of ownership. Wood v. Phillips, 4 Cir., 50 F. 2d 714; Philbin v. Carr, 75 Ind.App. 560, 129 N.E. 19, 706; Ford v. Wilson, 35 Miss. 490, 72 Am.Dec. 137. The inclosure of land is undoubtedly evidence of possession, and, either of itself or in connection with other acts of ownership, may be sufficient grounds on which to base an adverse claim. Robin v. Brown, supra; Davies v. Wickstrom, 56 Wash. 154, 105 P. 454.
It is sometimes difficult to establish ownership by right of possession of a property such as the property in dispute, where there are no improvements on the land, no occupancy by the claimants, and no tilling of the soil. In this case, however, the assertion of plaintiffs' title and the acts of ownership are clear and were demonstrated in such a manner that not only the predecessors in title of defendant but all adjoining landowners and many of the neighbors in the community must have had knowledge thereof. I refer specifically to the agreement of the Brandywine Bridle Path Group. The members of that group agreed among themselves that each member would erect and maintain the bridle path on his or her own property. The predecessors in title of plaintiffs not only erected and maintained a bridal path on the disputed property, but it was used by the other members of the group, including the predecessors in title of defendant. The use by plaintiffs and their predecessors in title of the property, including an agreement between the predecessors in title of both plaintiffs and defendant to erect a fence, the erection of a fence by the predecessors in title of defendant on the line between the disputed property and the property of defendant (there being no fence on the boundary as set forth in the deed), the erection of the bridle path, the hauling of fallen trees, the posting of notices forbidding hunting on the premises, the efforts to establish a game preserve and the use of the property generally by plaintiffs and their predecessors in title in the same manner as the adjoining property of plaintiffs, are sufficient, considering the character and nature of the property, to establish acts of ownership.
The fact that the fence was not erected upon the actual boundary does not prevent the ripening of the claim into an adverse title, even though it is shown that on taking possession claimant had no intention of taking what did not belong to him. 2 C.J.S., Adverse Possession, § 84, p. 636, note 77. See cases cited in 97 A.L.R. 36. If the fence was used as a boundary, it is immaterial who constructed it. Anderson v. Richards, 100 Or. 641, 198 P. 570. If the person in possession intends to claim the land to the line occupied by him and his possession is open and exclusive for the statutory period, such possession will be held to be adverse. Preble v. Maine C. R. Co., 85 Me. 260, 27 A. 149, 21 L.R.A. 829; Brown v. Clark, 73 Vt. 233, 50 A. 1066; Hoffman v. White, 90 Ala. 354, 7 So. 816; Palmer v. Dosch, 148 Ind. 10, 47 N.E. 176; Dake v. Ward, 168 Iowa 118, 150 N.W. 50.
Defendant has cited the case of Williams v. Hewitt, 128 Tenn. 689, 164 S.W. 1198, to the effect that the assumption of an adjoining owner that a fence was his boundary line and the occupancy by the adjoining owner of the disputed parcel up to the fence line, where the owner of a fifty-foot lot mistakenly erected a fence to include a frontage of fifty-two feet, did not create title by adverse possession. An examination *913 of this case will show that the decision of the court was exactly opposite to that stated in defendant's brief, the court holding that the claimant under such circumstances could hold adversely. In the case of Davis v. Kenney, 131 Wash. 168, 229 P. 311, cited by defendant, the owner moved the fences already on the land. There was no dispute between the original owners as to the property line and no claim of ownership to the fence was made until first owner had conveyed land to third parties. Of course, in such case, the court held that since it was not originally hostile, it was not adverse.
Defendant has offered evidence tending to prove that plaintiffs and their predecessors in title did not have exclusive possession of the property by producing witnesses who testified that at different times they went on the disputed property for the purpose of obtaining water for stock. The testimony was to the effect that employees of the predecessors in title of defendant entered the premises and took water from the stream in water buckets for the purpose of feeding the stock. In some instances this occurred on only one or two occasions. In all instances it took place around the years 1937 and 1938. While this testimony is not entirely clear as to the frequency of these acts, they were apparently not of such a nature as to show a breach in the continuity of possession or to show a mixed possession. Moreover, it is doubtful that such incursions were committed in the assertion of any title. Giving this testimony the fullest consideration, however, the fact remains that at the time of these occurrences the adverse possession of plaintiffs and their predecessors in title had ripened into a title by adverse possession. Plaintiffs' possession occurred in 1916. The occasions referred to by the witnesses offered by defendant took place in 1937 and 1938, more than twenty years after the entry by plaintiffs. The acquirement of title by right of adverse possession prior to the time referred to by the witnesses called on behalf of defendant, creates a new legal title though not a record title and that title would not be lost by a cessation of possession and continued exclusive possession is not necessary to maintain it. Fredericksen v. Henke, 167 Minn. 356, 209 N.W. 257, 46 A.L.R. 785.
The deed descriptions in plaintiffs' chain of title do not include the disputed property. There is no evidence in the record of any intention on the part of the original grantor to convey the land in question. Defendant contends that plaintiffs cannot tack to their adverse usage the adverse usage of their predecessors in title. This rule is very sharply limited. It is apparently applicable to those cases only wherein the deed itself is relied on solely to create privity, and there are no circumstances showing an intent to transfer possession of any property beyond that called for in the deed. Illinois Steel Co. v. Budzisz, 106 Wis. 499, 81 N.W. 1027, 82 N.W. 534, 48 L.R.A. 830. See 1 Am.Jur., Adverse Possession, Sec. 156, p. 882. It is generally held that where a person having title by deed to a lot or tract of land described in the deed also has inclosed with it and is in possession of adjoining land to which he has no record title and conveys the land by the description in the deed and delivers with it the possession of the entire inclosure, the continuity of possession will not be broken, and the two possessions may be joined and considered as one continuous possession. Duck Island Hunting & Fishing Club v. Whitnah, 306 Ill. 284, 137 N.E. 840. See Thompson on Real Property (Permanent Ed.), Vol. 5, Sec. 2653, p. 468.
In this case there was a parol understanding or agreement between the mother of plaintiff Josiah Marvel, Jr., who was the predecessor in title, that the property conveyed by her to plaintiffs included the disputed area. The predecessor in title was under the impression that she was conveying to plaintiffs the property in dispute, and the plaintiffs were under the impression that by reason of the deed they were obtaining title to that property. Based upon this understanding, plaintiffs took possession of the disputed property. That in itself is sufficient to create a privity between the parties. See cases cited Annotation, 46 *914 A.L.R. 797, note 4. Privity is the connecting link; a paper transfer is only one means of establishing it. Parol evidence, under such circumstances, would be admissible to show that the property was bought as a whole. See Illinois Steel Co. v. Budzisz, supra.
This action involves the determination of title to real estate. In such case this court usually requires the issue to be determined in an action at law. This is usually true even where, as here, equitable relief is also sought. See Wolfman v. Jablonski, Del.Ch., 99 A.2d 494; Green v. Cowgill, 30 Del.Ch. 345, 61 A.2d 410. Here the facts upon which plaintiffs' claim is predicated are not in serious dispute. There is no necessity for the finding of a jury to determine such dispute. See Richard Paul, Inc., v. Union Improvement Co., Del., 91 A.2d 49. The issue has been fully tried. No objection has been made to the jurisdiction of this court to determine the question of title. Plaintiffs have no adequate remedy at law. Justice therefore requires that the issue in this case be resolved by this court.
I conclude that plaintiffs have established open, notorious and hostile possession of the disputed property for a period of more than twenty years and are therefore the legal owners thereof.
An order will be signed, on notice, in accordance with this opinion.